UCANNELLA, Judge.
First National Bank of Commerce, Trustee of the Norton Family Trust, filed a Petition For Instructions and ordered the trust beneficiaries to show cause why the principal invasion requested by the income beneficiary should not be paid by the trustee. The trial court, by judgment dated October 14, 1994, ordered the trustee to invade the corpus of the trust in the amount of $6,500 per month in favor of Eileen Jackson Norton commencing from June 21, 1994. We affirm.
On November 23, 1988, after twenty years of marriage, Dr. John M. Norton and Eileen Jackson Norton created “The Norton Family Trust.” They funded the trust with $120,000 cash, all of which was community property. Accordingly, they were the Settlors of the trust. They designated themselves as the Trustees and the income beneficiaries. Upon the death of either, his or her interest vested in the surviving income beneficiary spouse. Dr. Norton’s seven |3children from a previous marriage were designated as the principal beneficiaries. The trust also contained a paragraph permitting the Trustees, in then-discretion, to invade principal in certain specified circumstances, for the benefit of the income beneficiaries, even though such a distribution might impair the interests of the principal beneficiaries. The term of the trust was through the life of the last income beneficiary.
On September 27, 1990, Dr. Norton died. Under the terms of the trust, Eileen Jackson Norton thereupon became the sole income beneficiary of the trust for the remainder of her life. In addition, as legatee under the Last Will and Testament of Dr. Norton, Eileen Jackson Norton inherited a lifetime usu-fruct over his half of the community and over all of his separate property. Also, in accord with Dr. Norton’s will, his son Daniel Terrance Norton became the Executor of his estate. And under the terms of the trust, Daniel Terrance Norton became the Successor Co-Trustee of the trust along with Eileen Jackson Norton. From the moment that Daniel Terrance Norton became Co-Trustee, all income disbursements to Eileen Jackson Norton ceased.
Within the year following her husband’s death, Eileen Jackson Norton was diagnosed with inoperable terminal lung cancer. She began to incur substantial medical and other related bills due to her condition. Daniel Terrance Norton still refused to authorize any income distributions from the trust to Eileen Jackson Norton. No income distributions were made for more than three years. On February 11, 1994, Eileen Jackson Norton filed suit against Daniel Terrance Norton, seeking: (1) that all accumulated income be distributed to her immediately; (2) that income be distributed to her in the future on a current basis; (3) that principal be distributed to her as necessary to provide for her pmedical care throughout the term of her illness to the extent that the income was insufficient to do so; (4) that Daniel Norton should be removed as Co-Trustee and an independent trustee be appointed in his place or as sole trustee; and in the alternative, (5) that she be permitted to revoke the trust by Act of Revocation and that the assets of the trust representing her one-half interest in the community be distributed to her. Finally, it was asserted in the petition that the trust was null and void because it was in contravention of law.
A hearing was held on the matter on March 14, 1994. The trial court permitted post trial memoranda. Thereafter, on April 1, 1994 the trial court rendered judgment ordering Daniel Terrance Norton to distribute all accumulated income in the trust to Eileen Norton, removing Daniel Terrance Norton and Eileen Jackson Norton as Co-Trustees, appointing First National Bank of Commerce as sole trustee, ordering First National Bank of Commerce to distribute net income to Eileen Jackson Norton on a regular monthly basis and to distribute to Eileen Jackson Norton “so much of the principal of the Trust during the term of her interest as income beneficiary as is appropriate in accordance with the terms and conditions of the *400 Trust.” Neither party sought a new trial from this ruling nor did they appeal. Accordingly, the judgment of April 1, 1994 is final.
On June 21, 1994, Eileen Jackson Norton, through counsel, submitted a request to the Trustee, First National Bank of Commerce, that it distribute to her $6,000 per month from the principal of the Trust because her medical expenses exceeded her income, less other expenses, by that amount. Eileen Jackson Norton’s attorney provided a copy of the request to Daniel Terrance Norton, who advised the Trustee that he thought such a disbursement was inappropriate andlsthat he opposed such a distribution. He considered such a distribution by the Trustee to be a breach of the Trustee’s fiduciary duty to the principal beneficiaries.
Faced with this conflict, on July 13, 1994, the Trustee filed a Petition For Instructions in district court. The petition named Eileen Jackson Norton and all of the principal beneficiaries as parties to the suit. Eileen Jackson Norton and one principal beneficiary, Jean Adair Norton, filed an answer to the petition. She asserted that Eileen Jackson Norton was not due distributions of principal under the trust provisions while she possessed over $100,000 in cash type assets.
Eileen Jackson Norton asserted that the intent of the trust, as established by herself and her husband, was to allow themselves access to their funds during their lifetime when necessary for medical expenses, among other things. She requested that the Trustee be ordered to distribute from principal the amount of $6,900[1] per month for medical expenses that exceeded her income less her expenses. She also requested invasion of principal and disbursement to her of approximately $30,000 representing past medical expenses that had exceeded her income over the previous three years. Also, she requested invasion of principal for attorney’s fees and costs expended in the previous lawsuit to obtain disbursement of income and removal of Daniel Terrance Norton as Co-Trustee.
On August 22, 1994, a hearing was held in the matter. The trial court requested post-trial memoranda. Thereafter, on October 14, 1994, the trial court rendered judgment ordering the Trustee to “invade the corpus of the trust in the amount of Six Thousand Five Hundred and no/100 ($6,500.00) Dollars per |6month and pay such amount over to the income beneficiary, Eileen Jackson Norton, payments retroactive to June 21, 1994, in addition to any other payments she receives under said trust.”[2] The judgment was silent as to all other claims.
On November 3, 1994, Jean Adair Norton filed a Motion and Order for Suspensive Appeal, which was signed on November 8,1994. She argues that the trial court erred in ordering the Trustee to invade the principal of the trust in favor of the income beneficiary, Eileen Jackson Norton.
Eileen Jackson Norton died on December 25, 1994. On January 20, 1995, the Testamentary Executrix of Eileen Jackson Norton’s Succession, her daughter by a previous marriage, Kathleen Chopp Schmitt, was substituted for Eileen Jackson Norton and filed an answer to the appeal. She argues in favor of the judgment insofar as it ordered the invasion of principal to pay her mother’s medical expenses, but argues that the trial court erred in not addressing Eileen Jackson Norton’s other claims and in not making the appropriate awards.
The substance of this appeal involves an interpretation of the trust instrument signed by Eileen Jackson Norton and her husband, as Settlors, Trustees and Beneficiaries. There are several provisions of that trust instrument which are pertinent to the questions before the court.
VII. POWERS OF THE TRUSTEE
7.1 The Trustees shall have all of the powers that are conferred upon trustees *401 under applicable law. If a question should arise as to whether Trustees have a particular power, this Trust Instrument shall be liberally construed as granting such power. Should future changes in the law expand the powers of trustees, the Trustees shall have those expanded powers.
JrVIKsic) SPECIAL POWERS OF THE TRUSTEE ACCUMULATION AND DISTRIBUTION OF INCOME
8.1 Accumulation and Distribution of Income. Pursuant to LSA-R.S. 9:1721 et seq., trustees shall have the discretion to determine the time or frequency of distribution of income. Unless so distributed, trust income shall be allocated to principal.
8.2 Invasion. Should Trustees determine that an income beneficiary needs resources for health, education, maintenance or support in addition to his interest in the trust and in addition to and taking into account funds available from other sources known to the Trustees, Trustees are authorized to make one or more distribution to that income beneficiary from accumulated income or principal, even though such distribution thereby impairs the interest of another beneficiary. In making such distributions, the Trustees shall be guided by immediate needs of the income beneficiary, without regard to the future needs of that beneficiary or of the future needs of other beneficiaries.
8.3 Facility of Payment. If a beneficiary is under legal disability or, if in the Trustees’ opinion, is incapable of properly managing his affairs due to illness, age or other cause, the Trustees may use or apply trust income or principal for his benefit.
These provisions must be considered in the context that the trust was created. First, the Settlors of the trust were husband and wife for twenty years, who took a large portion of their liquid assets, which were community property, and placed them in the trust that they thereby created. They named themselves as Trustees and income beneficiaries. Under the provisions of the trust, they gave themselves, as Trustees, the discretion to distribute income and, under certain circumstances, principal. They gave themselves all powers conferred by existing law and any powers expanded by future changes in the law. It was expressly provided that if any question arose concerning the powers of the Trustees, the trust instrument was to be “liberally construed as granting such power.”
hUpon review, it is clear, as stated in the original petition filed by Eileen Jackson Norton, and not contradicted, that the settlors intended that these funds, income and principal, would be available to them during their lifetime to care for their needs regarding “health, education, maintenance or support.” They placed their liquid assets in trust, to avoid probate, and granted themselves the broadest powers to distribute the funds in their discretion.
Within this context, we must consider whether the trial court judgment, permitting the invasion of the trust principal in favor of the income beneficiary/settlor/Trustee for her medical expenses in excess of her overall income less her personal expenses, without first dissipating her personal estate, was erroneous. We find no error in this judgment.
As stated above, the trust instrument itself places in the Trustees the broadest powers and discretion. While First National Bank of Commerce is presently the Trustee, the intent of the Trust Instrument must be considered as originally created, with the Set-tlors naming themselves as Trustees and granting to themselves the discretion to distribute income and principal.
The principal beneficiary, Jean Adair Norton, argues that under the provisions of the trust, Eileen Jackson Norton should first deplete her personal assets before the trust principal can be invaded for her medical needs. We find no such requirement either expressed or implied in the trust instrument. To the contrary, the trust provides very few particulars or specifics, leaving distributions largely to the discretion of the trustee. While the trust instrument does provide that the Trustee should “tak[e] into account funds available from other sources known to the Trustee” in determining that an income beneficiary needs additional resources which may be taken from principal, it does not state |9that the income beneficiary must first de- *402 píete all of his/her assets before such a distribution from principal can be made. The trust instrument, in expressly addressing disbursements of principal to income beneficiaries, authorizes such distributions to income beneficiaries even though it impairs the rights of the principal beneficiaries.
The trial judge heard the testimony and observed the witnesses. We note that the trial judge seemed particularly concerned with Daniel Terrance Norton’s possible bad faith in keeping Dr. Norton’s Succession under administration for an unduly long time[3] and simultaneously denying Eileen Jackson Norton any income distributions from the trust, all while she was seeking medical care for her diagnosed, inoperable, terminal cancer. In rendering judgment, the trial court found that denying Eileen Jackson Norton access to her own money in her time of medical need was not what was intended by the trust. Under the circumstances of this case, we find no error in the trial court ruling, ordering the trustee to invade principal of $6,500[4] per month to cover Eileen Jackson Norton’s medical and related expenses that exceeded her income less her other expenses without requiring her to first dissipate her personal estate. And, we do not find any error in the trial court’s determination that the judgment should be retroactive to June 21, 1994, the date of demand.
| ipThe Executrix of Eileen Jackson Norton’s estate argues that the trust is null and void, being in contravention of law, or, in the alternative, the Act of Revocation executed by Eileen Jackson Norton on March 2, 1994 should be given effect. The Executrix also asserts a claim from the trust principal for attorney’s fees expended in the previous lawsuit to obtain the income distributions to Eileen Jackson Norton and to have Daniel Terrance Norton removed as Trustee.[5] Jean Adair Norton argues that the above claims are barred by Res Judicata. We agree and do not consider these arguments, finding them not properly before the court.
In reviewing the record, we find that these claims were presented to the district court in the previous case, and therein denied, through the court’s failure to award the relief requested. Where a judgment is silent to a demand at issue in a case under the pleadings, such silence constitutes absolute rejection of the demand. Succession of Foster, 240 La. 269, 122 So.2d 96 (1960); Ernst v. Bassett, 521 So.2d 414 (La.App. 5th Cir.1988). Neither party sought a new trial from that judgment or an appeal. Accordingly, that judgment is final and res judicata. The claims denied by that final judgment cannot be raised in this appeal of a later judgment and, therefore, are not properly brought before this court in this appeal. Moreover, there is no provision in the trust instrument permitting distribution of principal for past debts. Rather, the trust instrument is written in terms of distributions for present needs.
| nAccordingly, for the reasons stated above, we affirm the trial court judgment, ordering the Trustee to distribute $6,500 per month in principal from the trust to Eileen Jackson Norton, retroactive to June 21,1994. Costs of this appeal are to be paid by appellant.
AFFIRMED.

. In her original claim filed with the Trustee she had requested $6,000 per month and had provided documentation to support that amount. However, in answer to the Petition For Instructions, she asserted that she had miscalculated and increased her request to $6,900. She also filed supporting documentation.

. In view of Eileen Jackson Norton’s death on December 25, 1994, the judgment, in effect, requires the Trustee to pay to the estate of Eileen Jackson Norton approximately $40,000 from the $225,000 trust principal.

. The Succession of Dr. John Norton was still under administration at the time of the hearing in this case, almost four years after his death.

. Appellant Jean Norton argues that if the court agrees that principal should be invaded then the amount should be decreased because some of Eileen Norton’s expenses should not be accepted. We find no merit to that argument, finding to the contrary that the record amply supports the amount set by the trial court, $6,500.00.

.The executrix also requests invasion of the principal for attorney’s fees for the instant action. However, we note that attorney’s fees were included in the expense exhibit upon which the $6,500 award was based and is therefore already covered by the judgment.