622 So.2d 709 (1993)
Alvin H. ALBRITTON
v.
A. Stirling ALBRITTON and Hallie H. Box.
No. 92 CA 0255.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
Rehearing Denied August 4, 1993.
*710 John Dale Powers, Baton Rouge, for plaintiff-appellant Alvin H. Albritton.
Claude F. Reynaud, Jr., Baton Rouge, for defendant-appellant A. Stirling Albritton, et al.
Before WATKINS, CRAIN and GONZALES, JJ.
WATKINS, Judge.
The instant appeal arose out of a rule to remove the trustees of the Alvin R. Albritton Trust, which was under attack by the plaintiff, beneficiary Alvin H. Albritton. Alvin H. Albritton originally brought this suit seeking to have an extension of the trust declared invalid. During the litigation the instant rule was filed in an effort to remove the trustees. Prior to the final determination of the original matter concerning the validity of the trust extension, a hearing was held on the instant rule wherein the trial court dismissed the plaintiff's rule and further ordered that the trustees reimburse the trust for one-half of the attorney's fees incurred in defense of the removal action. The court also ordered one-half of the court costs to be paid by the plaintiff and the other one-half to be paid by the trustees and the trust. Both parties have appealed that judgment.
Pertinent background facts are necessary for a complete understanding of the instant appeal. Plaintiff, the grandson of Alvin R. Albritton, was bequeathed an undivided one-fourth interest in the naked ownership of his grandfather's residuary estate. The naked ownership interest was placed into an irrevocable testamentary spendthrift trust with plaintiff's father, Dr. A. Stirling Albritton, and uncle, William Louis Albritton, named as trustees; the plaintiff's father and uncle also received a lifetime usufruct over the property in *711 trust.[1] The trust was set to terminate in two stages: one-half of the trust would terminate on plaintiff's twenty-first birthday (January 23, 1973); the other half would terminate on plaintiff's twenty-sixth birthday (January 23, 1978). On September 21, 1972, approximately four months before the plaintiff's twenty-first birthday, the plaintiff, at the request of his father, signed as settlor and beneficiary a document entitled "Extension of Trust,"[2] which purportedly extended the trust for the plaintiff's lifetime.[3] In addition to plaintiff's signature, the document contained the signatures of plaintiff's father and uncle as co-trustees and a notary and two witnesses. On January 12, 1973, the trial judge signed an ex parte order upon petition of the trustees, which purported to validate the trust extension.
On January 12, 1988, sixteen years after the purported extension was executed, the plaintiff filed suit against the trustees,[4] seeking a declaration that the agreement executed by him on September 21, 1972, was of no force and effect, or alternatively, that any trust created in connection therewith should be terminated and annulled. The plaintiff alleged that he signed the extension based on his father's representation that all the grandchildren would execute lifetime extensions in order to keep the family property from being partitioned, particularly a tract known as Stoney Point. The document was prepared by the attorney for the trustees and was signed by the plaintiff without advice of counsel. In response to plaintiff's petition, the defendants filed a peremptory exception raising the exception of prescription.
After a hearing the trial judge sustained the exception of prescription and dismissed plaintiff's claims. We affirmed this decision finding that although the provisions of the trust extension violated the trust code, the extension was not an absolute nullity. We agreed with the trial court's conclusion that the trust extension was merely a relative nullity and that the five year prescriptive period applicable to relatively null contracts, as set out in LSA-C.C. art. 2032, was applicable. Since the instant appeal was lodged, the Louisiana Supreme Court in Albritton v. Albritton, 600 So.2d 1328, 1331 (La.1992), reversed our decision in the original matter and remanded the case to the trial court. The court determined that the trust extension was contrary to the settlor's intent and to the rules expressed in the trust code in LSA-R.S. 9:2021[5] and LSA-R.S. 9:2025[6]. Consequently the court concluded that the extension of the trust *712 was an absolute nullity, which is imprescriptible. The court further determined that the attempt to create a new trust must also be considered an absolute nullity. The court explained that the spendthrift provisions of the trust prohibited the beneficiary from transferring, assigning, or encumbering his interest in the trust; therefore the attempt to create a new trust during the existence of the prior trust was in violation of the concept of spendthrift trust and in violation of the settlor's intent. The court remanded the matter to the trial court. During this time the removal action has proceeded to this court on appeal wherein the parties allege the following errors.
Plaintiff assigned the following errors:
1. The trial court erred in denying plaintiff's motion to remove the trustees.
2. The trial court erred in ordering the trustees to reimburse the trust for only ½ of the monies used to pay the trustees' attorney's fees.
3. The trial court erred in ordering plaintiff to pay ½ of the court costs.
Defendants assigned the following errors:
1. The trial court erred in failing to assess 100% of the trustees' attorney's fees to the trust.
2. The trial court erred in assessing the trustees with ¼ of the court costs in this proceeding.
By joint stipulation to this court the parties conceded that the decision of the Louisiana Supreme Court with regard to the trust extension made moot the issue of removal in the instant matter. However, the parties continue to assert their alleged errors with regard to attorney's fees and costs. Because the entitlement to attorney's fees in a removal action is largely dependent upon the outcome of the removal action, we must first review the trial court's decision with regard to the removal of the trustees.[7]
The trial court's oral reasons for judgment provide in pertinent part as follows:
[T]he trustee arrangement comes about from will of the grandfather and a subsequent event at which that trustee (sic) was created anew or extended and the court has ruled on that and even for a long time after that was done, the '72 extension or creation of a new trust, there was no problems on the scene like we have now.... Alvin and his father were on good terms at the time he agreed to extend or create a new trust and the merits of that and why he did it is really not before the court and didn't get before the court in the other case. It was questioned that the action was not brought timely, that was my ruling even though I realized, as a jurist and as a person, the seriousness of that event that put Alvin's interest in his grandfather's estate in trust not only for his father's life but for his life, there's no question, that was written out clearly and it was done. The reason why it was done is another story. But, anyway, for a period after that there was good relationships.... The law says hostility, conflict alone will not be sufficient cause to remove trustees. I'm bound by the law whether I like it or not and the proof of the pudding is that the trust, the administration, execution, furtherance of the naked ownership of Alvin has not been impaired during this administration of the trust by his daddy and his uncle and his daddy and Ms. Box, in the opinion of this court....
... [T]he record before the court is that the trust has not been impaired and suffered because of the, quite frankly, the hostility or the conflict that's of record by law.
In fact, the trustees have favored the trust in the record of this case by acquiring when no income was coming into the trust. True, some of it has been used in a manner that's not to the benefit of the beneficiary.... [T]he attorney's fees, as far as the removal action, should be shared by the trust and by the trustee *713 individually, and I'm going to make that part of my ruling and any fees in furtherance of this removal will be on the same percentage because I do think because of the unique circumstances of this trust there's an interest outside the interest of the trustee, quite frankly, in defending this suit. That's why I asked the question, why is the doctor and Ms. Box so interested in perpetuating the naked ownership trust.
The court has ruled that they have a right to do so by the vehicle that was established back in '72, but what I'm saying, there's some benefit there, outside the benefit that a trustee has in defending his actions in the trust, which I think the trust should pay half and he should pay half as far as the legal fees are concerned.

LAW
Under LSA-R.S. 9:1789 "[a] trustee may be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause shown."
It is a general rule that neither conflict of interest, particularly where the settlor knew of the potential conflict at the time the trust was created and the trustee named, nor the hostility itself, constitutes sufficient cause for removal of a trustee unless it materially impairs or interferes with the proper administration of the trust. Succession of Noe, 398 So.2d 1173, 1177 (La.App.2d Cir.), writ denied, 405 So.2d 530 (La.1981). However, while mere animosity is not sufficient ground for removal of the trustee, the statutory provisions relative to the responsibilities of a trustee are rigid and hold the trustee to an even higher fiduciary responsibility to his beneficiary than that owed by a succession representative to heirs.[8] The very word "trustee" implies the strongest obligation on the part of the trustee to be chaste in all dealings with the beneficiary. Succession of Dunham, 408 So.2d 888, 900 (La.1981). This duty prevails even in the face of the following liability limiting provision contained in grandfather Albritton's will.
The Trustees shall not be in any manner liable or responsible by reason of any loss, injury or damage which may be done or which may happen to the property in the trust estate or any part thereof by or through the action or neglect of the Trustees or by or through the action or neglect of any other person, nor shall the Trustees be answerable or responsible for any act or thing whatsoever except the Trustees' own wilful default or gross neglect. The Trustees shall be fully protected in any action by them taken, suffered, or performed in good faith in accordance with the opinion of an attorney at law acting as their counsel.
In the Matter of Donald E. Bradford Trust, 524 So.2d 1213, 1218 (La.App. 1st Cir.1987), modified 538 So.2d 263 (La.1989), we addressed a similar exculpatory clause and held that notwithstanding the exculpatory clause:
A trustee is required to administer the trust solely in the interest of the beneficiaries. LSA-R.S. 9:2082. Failure to do so is considered a breach of the duty of loyalty. See Comment (c) under LSA-R.S. 9:2082. The duty of loyalty is the fundamental duty owed by a trustee as a fiduciary. Because of that fact, an exculpatory `provision in the trust instrument is not effective to relieve the trustee from liability for breach of the duty of loyalty to a beneficiary ...'. LSA-R.S. 9:2206 B.
Although we believe the record supports the trial court's conclusion that the hostility between Dr. Albritton and the plaintiff alone did not impair the administration of *714 the trust, we believe that the trial court erred in refusing to consider the actions of the trustees with regard to the extension.[9]
Disobedience of the trust instrument can be a ground for removal and in such cases it is immaterial that by the trustee's disobedience the trust estate has greatly increased. See Bogert, Trusts and Trustees § 527. The basis of removal is not that the estate has been depleted or is in danger of depletion, but rather that it is not being administered as the settlor had directed. Id. As stated by the Supreme Court in Albritton v. Albritton, 600 So.2d 1328, 1331 (La.1992), "there is a strong public policy in effectuating and protecting the settlor's intent as set forth in the trust document."
The plaintiff claims that he was misled by his father when he signed the extension of the trust in 1972, and that his father knew, through his attorney, that the validity of the extension was doubtful. It has been shown that the document purporting to extend the trust was prepared by the attorney for the then trustees, A. Stirling Albritton and Louis Albritton, and that the plaintiff was not independently represented. It was further shown that the details of the properties involved in the trust were not explained to the plaintiff and that the plaintiff assumed that the extension was necessary to prevent a tract of land known as Stoney Point from being partitioned. It is also important to note that the legal advice obtained by the trustees in connection with the execution of the extension indicated that the attorneys believed that the extension would not be binding on the beneficiaries.
In defense, Dr. Albritton testified that he thought that the trust extension would be in the best interest of his son because he considered his son irresponsible.
The evidence at the trial of this matter further established that over the last 13 years the relationship between Dr. Albritton and his son has deteriorated to the point where they only communicate through their respective attorneys. As examples of the hostility, the plaintiff submitted evidence of a suit filed by Dr. Albritton to revoke a previous donation made to the plaintiff and a suit where Dr. Albritton sued to enjoin the plaintiff from entering a tract of land held in the plaintiff's trust.[10] After the injunction was procured, the plaintiff's attorney sought approval from Dr. Albritton to inspect the property pursuant to LSA-R.S. 9:2089. Later, when the plaintiff attempted to enter the property for the requested inspection, Dr. Albritton notified the local authorities and asked that they prohibit any trespass by the plaintiff.[11] Deputy Joseph Hughes testified that he was dispatched to the property after Dr. Albritton's call and he understood that he was to arrest or charge the plaintiff if he entered the property.
The testimony of both Dr. Albritton and Ms. Box revealed that although the trust instrument and the trust code require an annual accounting to be made by the trustees, they both claimed that they were unaware of this requirement. Consequently, they did not file an annual accounting from 1956 until the plaintiff filed suit in 1988 to compel an accounting. The trustees also testified that they were unaware of the provision of the trust instrument which required the trustees to maintain a list of at least three potential successor trustees.
*715 They also admitted that they never conferred with the plaintiff over any aspect of the trust.
Dr. Albritton also admitted that no depletion allowance was reserved to the trust for the mineral income received from trust property pursuant to LSA-R.S. 9:2152.
In defense, the trustees assert that they have been good administrators of the trust property and have increased the value of the trust in the following respects. The trustees never charged the trust a fee for their services. Furthermore, the trust was not charged for services provided by accountants, attorneys, geologists, mineral consultants, and timber specialists in connection with the trust properties. The trust did not pay the liability insurance premium for the properties, nor did the trust pay for the maintenance of the properties. The usufructuaries also built a warehouse on one of the trust properties and completely renovated an apartment complex. The trustees also testified that the usufructuaries purchased several properties and gave the trust a partial interest in them.[12]
There is no question that the extension of the trust was in clear contravention of the trust code and the settlor's wishes. We are further convinced that the fact that Dr. Albritton was also a usufructuary of the property held in trust makes his actions with regard to the extension of the trust tantamount to self-dealing and constitutes a breach of the duty of loyalty owed to the beneficiary. We are further convinced that a great deal of animosity exists between the trustee father and the beneficiary son. The hostility and ill will appear deep-seated and in the light of human experience it is difficult if not impossible to believe that Dr. Albritton's actions as trustee will remain unaffected by these emotions.
After consideration of all the facts of this case we believe that the breach of the duty of loyalty, the escalating hostility between Dr. Albritton and his son, and the failure of the trustees to account, justified the removal of Dr. Albritton as trustee. However, we do not believe that the trial court erred in finding that the plaintiff failed to prove sufficient cause for the removal of Ms. Box as co-trustee. The primary cause for Ms. Box's removal was the assertion that because Ms. Box worked for Dr. Albritton, she was his alter ego.[13] We believe the record supports the trial court's conclusion that the plaintiff failed to prove sufficient cause for Ms. Box's removal.

ATTORNEY'S FEES/COSTS
As stated before, the trial court ordered the trustees, Dr. Albritton and Ms. *716 Box, to reimburse the trust for one-half of the attorney's fees incurred in defense of this removal action.
In a removal action it is generally held that if the attempt to remove the trustee fails, it is proper to order the payment of attorney's fees and costs out of the trust estate. Bogert, Trusts and Trustees § 525. See also Powell v. Cocowitch, 94 So.2d 589 (Fla.1957). In view of our holding that the facts support the removal of Dr. Albritton as trustee, but not Ms. Box, he is required to reimburse one-half of the attorney's fee paid by the trust.
For the reasons set forth, the judgment of the trial court is reversed in part and affirmed in part. It is ordered that Dr. Albritton reimburse the trust in the amount of one-half of the sum withdrawn from the trust for attorney's fees associated with the defense of this removal action. It is further ordered that all costs of the trial court proceeding and the costs of appeal be paid by Dr. Albritton.
REVERSED IN PART; AFFIRMED IN PART.
CRAIN, J., concurs in part and dissents in part and assigns reasons.
CRAIN, Judge, concurring in part and dissenting in part.
I respectfully dissent from that portion of our opinion which affirms the judgment of the trial court holding there is no reason to remove Ms. Box as trustee and assessing the trust with one-half of the attorney fees expended by Ms. Box in defending her removal as trustee. I concur with reversing the trial court with the assessment of the trust for one-half of the attorneys' fees expended by Dr. Albritton in defending his removal as trustee. However, I differ with the reasons for the majority refusing to require the trust to reimburse Dr. Albritton.
This trust would have totally terminated by January 23, 1978, the beneficiaries twenty-sixth birthday, without the extension executed on September 21, 1972. The Louisiana Supreme Court has held that the extension was an absolute nullity. Albritton v. Albritton, 600 So.2d 1328 (La.1992). Absolute nullities are void ab initio. La. C.C. art. 2033. Consequently, no trust existed after January 23, 1978. Ms. Box became trustee in 1982. Legally, no trust existed for her to become a trustee. This removal action was brought in connection with the suit to declare the extension void which was filed on January 12, 1988. At that point no trust existed. The trustees had no grounds to incur attorney fees to defend their removal as trustee of a non-existent trust. Likewise, no trust exists from which attorney fees can be taken.
There should be no reimbursement of attorney fees incurred by either purported trustee in defending removal from a non-existent trust.
I respectfully concur in part and dissent in part.
NOTES
[1] The will also created identical trusts in favor of Alvin R. Albritton's other three grandchildren, Michael Stirling Albritton, Mary Louise Albritton, and Carol Stewart Albritton.
[2] The document provided in pertinent part:

3.
Settlor does hereby, and acting as Settlor, extend the term of the Trust described above [The Alvin R. Albritton Testamentary Trust] insofar as Settlor is beneficiary thereunder to provide that the term is for the lifetime of the Settlor.
4.
If it should be determined that the Trust described above cannot be extended in this manner, then Settlor declares the Settlor's interest in the Trust described above shall be held and is hereby placed irrevocably in trust and shall be managed and invested and reinvested and held with and distributed in exactly the same manner as set forth in the Trust described above, but for Settlor's lifetime, by the same Trustees and successors as proved therein, and in that event, Settlor incorporates the trust agreement described above into this act by reference as a new trust.
[3] Plaintiff's brother, Michael Stirling Albritton, also executed an extension identical to the plaintiff's. However, the plaintiff's cousins, Mary Louise Albritton and Carol Stewart Albritton, executed extensions for less than lifetime durations.
[4] In 1982, William Louis Albritton resigned as co-trustee and Ms. Hallie H. Box was appointed as successor co-trustee.
[5] § 2021. General rule; modification

The settlor may modify the terms of the trust after its creation only to the extent he expressly reserves the right to do so. (Emphasis added.)
[6] § 2025. Delegation of right to terminate or to modify administrative provisions.

A settlor may delegate to another person the right to terminate a trust, or to modify the administrative provisions of a trust, but the right to modify other provisions of a trust may not be delegated. (Emphasis added.)
[7] Although the parties conceded that the issue of removal was now moot, they did not stipulate that the decision of the trial court was correct.
[8] This high standard of conduct is codified in the following Trust Code provisions: LSA-R.S. 9:2082 provides that "a trustee shall administer the trust solely in the interest of the beneficiary." LSA-R.S. 9:2090 provides that "[a] trustee in administering a trust shall exercise such skill and care as a man of ordinary prudence would exercise in dealing with his own property." LSA-R.S. 9:2085 prohibits the trustee from buying or selling trust property directly or indirectly from or to himself, his relative, his employer, employee, partner or other business associate. LSA-R.S. 9:2091 provides that "[a] trustee is under a duty to a beneficiary to take reasonable steps to take, keep control of, and preserve the trust property."
[9] During the trial of this matter the court stated that the facts surrounding the extension of the trust instrument were irrelevant to the instant proceeding and only permitted the testimony concerning this issue when the plaintiff's attorney attempted to obtain a writ to this court on the trial court's ruling refusing to admit any evidence regarding the extension.
[10] Dr. Albritton testified that he obtained the injunction to protect himself as usufructuary, and he admitted that it was of no benefit to the plaintiff. He also admitted that the difficulties between him and his son became worse after he obtained the injunction.
[11] Dr. Albritton testified that he did not want the plaintiff to inspect the property on that day because he was having a hunting party later in the day and that he did not want the plaintiff to cause a disturbance. However, he admitted that there was no one present when the plaintiff arrived with his attorney to inspect the property and that his guests were not due to arrive until later in the day.
[12] It is uncertain at this point exactly what benefit the trust received from certain actions of the trustee/usufructuaries as the following Civil Code articles reveal. LSA-C.C. art. 558 provides that "[t]he usufructuary may make improvements and alterations on the property subject to the usufruct at his cost and with the written consent of the naked owner. If the naked owner fails or refuses to give his consent, the usufructuary may, after notice to the naked owner and with the approval of the proper court, make at his cost those improvements and alterations that a prudent administrator would make." LSA-C.C. art. 601 provides that "the usufructuary may remove all improvements he has made, subject to the obligation of restoring the property to its former condition. He may not claim compensation from the owner for improvements that he does not remove or that cannot be removed." LSA-C.C. art. 577 provides that "the usufructuary is responsible for ordinary maintenance and repairs for keeping the property subject to the usufruct in good order...." LSA-C.C. art. 581 provides that "[t]he usufructuary is answerable for all expenses that became necessary for the preservation and use of the property...." LSA-C.C. art. 584 provides that "[t]he usufructuary is bound to pay the annual charges imposed during his enjoyment on the property subject to the usufruct, such as property taxes." LSA-C.C. art. 585 provides that "[t]he usufructuary is bound to pay the extraordinary charges that may be imposed.... If these charges are of a nature to augment the value of the property ... the naked owner shall reimburse the usufructuary at the end of the usufruct only for the capital expended."

We further note that the properties which the trustees partially paid for and then placed in trust do not appear to be an outright donation, and it is questionable whether the trust may be charged for these purchases at a later date.
[13] Ms. Box also failed to provide annual accountings from 1982 until 1988, however we do not find this neglect, standing alone, to be sufficient to support removing Ms. Box.