WELCH, J.
12This is an appeal by Joseph Patton (“Pat”) Mashburn and Donald J. (“Don”) Mashburn, in their capacities as the managing co-trustees of the Jack and Sadie Pugh Mashburn Marital Trust (“marital trust”) and by Pat Mashburn and Richard A. Mashburn, in their capacities as the co-trustees of the Mashburn Family Trust (“family trust”) from two trial court judgments. The first judgment ordered the managing co-trustees of the marital trust to pay Timothy R. (“Tim”) Mashburn, one of the nine beneficiaries of the trust, the sum of $2,000 per month from the income of the trust, and if necessary, from its principal.[1] The second judgment declared that the family trust and the marital trust each created nine separate trusts (for a total of eighteen trusts) to which different trustees could be appointed; removed co-trustees, Pat Mashburn and Don Mash-burn, from two of the trusts established by the marital trust; removed co-trustees, Pat Mashburn and Richard Mashburn from two of the trusts established by the family trust; and appointed the beneficiary of each of those individual trusts as the successor trustee for each trust.
Additionally, a supervisory writ application by the co-trustees of the family trust seeking review of the trial court’s judgment denying their motion for summary judgment (which sought the dismissal of Tim Mashburn’s petition to terminate his family trust), was referred to this panel.
For reasons that follow, we reverse the first judgment on appeal; we affirm the second judgment insofar as it declares that the marital trust and the family trust each created nine separate trusts (for a total of eighteen trusts), and reverse that judgment in all other respects; and we grant the supervisory writ application, reverse the trial court’s judgment denying the co-trustees’ motion for summary [¡Judgment, and we enter judgment granting the motion for summary judgment and dismissing Tim Mashburn’s petition.
I. FACTUAL AND PROCEDURAL HISTORY
John S. (“Jack”) and Sarah (“Sadie”) Pugh Mashburn had nine children; namely, Helen Mashburn Penton, John S. Mashburn, Jr., Pat Mashburn, Don Mash-burn, Michael F. Mashburn, Rita Ann Mashburn, Tim Mashburn, William T. Mashburn, and Richard Mashburn. Sadie Mashburn died on February 23, 1996, and Jack Mashburn died on July 8, 2000.

*1140
The Family Trust

By an authentic act executed on December 18, 1975, Jack and Sadie Mashburn created the family trust, with their nine children designated as both the income and principal beneficiaries of the trust, and with First Guaranty Bank of Hammond, Louisiana designated as trustee. The trust instrument further provided that in the event of a vacancy in the office of trustee, the successor trustee would be Hibernia National Bank in New Orleans.
On May 8, 1984, pursuant to a Petition for Appointment of Successor Trustees filed by Jack and Sadie Mashburn, as the settlors of the family trust, Julius Prokop, Rita Ann Mashburn, and Don Mashburn were appointed by the court as successor co-trustees of the family trust, because First Guaranty Bank had discontinued offering trust services and resigned as trustee of the family trust, and Hibernia National Bank had declined its appointment as the successor trustee. In November 1990, Julius Prokop resigned as co-trustee, and thereafter, the court confirmed Rita Ann Mashburn and Don Mashburn as the two co-trustees of the family trust.
On August 19, 1997, pursuant to a petition filed by Jack Mashburn, as settlor, and by his nine children, Pat Mashburn and Richard Mashburn were appointed by the court as the successor co-trustees of the family trust, because Rita 14Mashburn and Don Mashburn had resigned as its trustees.
On October 16, 2003, Tim Mashburn filed a petition to terminate the family trust for his benefit alleging that he was destitute, handicapped, unable to work, and in need of medical attention; that his resources without distributions from his family trust were insufficient to provide for his necessary support, maintenance, medical expenses, and welfare; and that he could not qualify for public assistance because of his interest in the family trust. Tim Mashburn requested that his family trust be terminated and its assets distributed to him in accordance with La. R.S. 9:2026,[2] or alternatively, that the court order the invasion and distribution of principal from his family trust for his benefit on account of his medical and financial condition and needs in accordance with La. R.S. 9:2067.[3]
On February 23, 2004, the co-trustees of the family trust filed a peremptory excep *1141 tion raising the objections of no cause of action and no right of action, and alternatively, a motion for summary judgment seeking therein the dismissal of Tim Mash-burn’s petition to terminate the family trust. The co-trustees contended that | sgiven the undisputed material facts, Tim Mashburn cannot terminate (or modify) the family trust under La. R.S. 9:2026 nor can he invade its principal under La. R.S. 9:2067 merely because he is unable to pay his monthly expenses due to his alleged poverty or disability. By judgment signed on March 9, 2005, the trial court overruled the co-trustees’ exceptions and denied their motion for summary judgment. It is this judgment that the co-trustees seek review of in the application for supervisory writ that was referred to this panel.
On March 14, 2005, Tim Mashburn filed a motion alleging that the August 19, 1997 judgment appointing Pat Mashburn and Richard Mashburn as co-trustees of the family trust was a nullity because he was not a joint petitioner in that matter and did not authorize that petition to be filed on his behalf, he was neither served with nor given notice of the petition, and he did not learn of the existence of that petition and order until February 22, 2005. Accordingly, Tim Mashburn contended that Pat Mashburn and Richard Mashburn were improperly appointed as co-trustees of the family trust, that they should be excused as trustees of the family trust, and that the judgment ordering their appointment as trustees should be annulled under either La. C.C.P. art. 2002(A)(2) or art. 2004. Additionally, Tim Mashburn alleged that Pat Mashburn and Richard Mashburn had failed to render annual accounts of their administration of the trusts; had failed to make required distributions to the beneficiaries; had provided incomplete, misleading, and false information to the beneficiaries; and breached their fiduciary duties to the beneficiaries. Therefore, he requested that the court excuse Pat Mash-burn and Richard Mashburn as co-trustees of the family trust, declare the office of trustee of the family trust vacant, and appoint a successor trustee for the family trust.
On March 18, 2005, Helen Penton also filed a motion seeking to nullify the August 1997 order appointing Pat Mashburn and Richard Mashburn as co-trustees of the family trust, essentially setting forth the same grounds as Tim Mashburn — |thats she was not a joint petitioner in that matter and did not authorize that petition to be filed on her behalf, that she was neither served with nor given notice of the petition, and that she did not learn of the existence of that petition and order until “[s]ometime in 2005.” She further requested that she be appointed as the successor trustee of her family trust (and her marital trust) and that her interest in the assets of her family trust (and her marital trust) be segregated from the others.

The Marital Trust

By an authentic act executed on June 8, 1984, Jack and Sadie Mashburn created the marital trust. Jack and Sadie Mash-burn were the initial income beneficiaries, and upon their death, their nine children were to succeed to their interest as the secondary income beneficiaries. Jack and Sadie Mashburn’s nine children were also designated as the principal beneficiaries. Jack and Sadie Mashburn were designated as trustees, and upon their death, all of the principal beneficiaries were to serve as co-trustees, unless a principal beneficiary failed to take office within thirty days after notification of the right to serve and the requirements for taking office.
After the deaths of Jack and Sadie Mashburn, Helen Penton, John Mashburn, *1142 Pat Mashburn, Don Mashburn, Michael Mashburn, and Richard Mashburn all qualified for and were recognized by the court as co-trustees of the marital trust. Pursuant to a majority vote of the co-trustees, Pat Mashburn and Don Mash-burn were elected as the “managing co-trustees” of the marital trust. See In re Mashburn Marital Trust, 2004-1678 (La. App. 1st Cir.12/29/05), 924 So.2d 242, 243-44, writ denied, 2006-1034 (La.9/22/06), 927 So.2d 384 (“Mashburn Marital Trust (I)”).
On August 19, 2003, Tim Mashburn filed a motion for monthly support distributions, alleging that he was one of nine principal and income beneficiaries of the marital trust and that he was destitute, handicapped, unable to work, in need of |7medical attention, and that his resources were insufficient to provide for his necessary support, maintenance, medical expenses, and welfare. Pursuant to La. R.S. 9:2067, the trial court ordered the managing co-trustees of the marital trust to make distributions to Tim Mashburn from the marital trust (its income and principal) in the amount of $2,000 per month for his support. Although the trial court initially limited the monthly support distributions to a period of six months, on April 5, 2004, the trial court rendered judgment extending the support distributions for an additional six months, and by judgment signed on October 12, 2004, the trial court ordered the monthly support distributions continue until terminated by the court. Additionally, the October 12, 2004 judgment ordered the managing co-trustees of the marital trust to “take any and all actions necessary for them to timely fund and pay the ... payments ordered to be paid to [Tim] Mashburn, including without limitation the sale of immovable properties and other assets.” It is from this October 12, 2004 judgment that the managing co-trustees of the marital trust have appealed.[4]

The May 12, 2005 Judgment

After a two-day trial on the merits of pending issues concerning both the family trust and the marital trust, the trial court signed a judgment on May 12, 2005, as follows:
(1) declaring that the marital trust instrument settled nine separate trusts, one for the sole benefit of each of the nine children of Jack and Sadie Mashburn; and declaring that the family trust instrument settled nine separate trusts, one for the sole benefit of each of the nine children of Jack and Sadie Mashburn;
ls(2) ordering the managing co-trustees of the marital trust prepare and render accountings for each trust established by the marital trust instrument from the date of the first monthly distribution to Tim Mashburn, which accountings were to reflect on a month-by-month basis the monthly distributions to Tim Mashburn as charges against the interest of the marital *1143 trust for his benefit and as payments to Tim Mashburn from the marital trust for his benefit, first out of income, and then, as necessary out of principal,
(3) ordering that Pat Mashburn and Don Mashburn (as managing co-trustees) and that John Mashburn, Jr., Michael Mashburn, Rita Ann Mashburn, William Mashburn, and Richard Mashburn (as other trustees of the marital trust) be removed as trustees for the marital trusts for the benefit of Helen Penton and Tim Mashburn;
(4) ordering that Pat Mashburn and Richard Mashburn be removed as trustees of the family trusts for the benefit of Helen Penton and Tim Mashburn;
(5) ordering that Helen Penton be appointed as the sole trustee of the marital trust for her benefit, without bond and the sole trustee of the family trust for her benefit, without bond;
(6) ordering that Tim Mashburn, and his attorney, Walter Antin, Jr. be appointed the provisional trustees of the marital trust for Tim Mashburn’s benefit and the provisional trustees of the family trust for Tim Mashburn’s benefit;
(7) ordering that Pat Mashburn, Don Mashburn, and Richard Mashburn segregate the assets of Helen Penton’s family trust and marital trust by delivering legal title and possession of one-ninth (1/9) of those assets to Helen Penton;
(8) ordering that Pat Mashburn, Don Mashburn, and Richard Mashburn segregate the assets of Tim Mashburn’s family trust and marital trust by delivering legal title and possession of one-ninth (1/9) of those assets to Tim Mashburn and Walter Antin, Jr.; and
la(9) ordering that Helen Penton, as trustee of the family trust for her benefit, and that Tim Mashburn and Walter Antin, Jr., as trustees of the family trust for the benefit of Tim Mashburn, be made managing members of Mashburn Real Estate, L.L.C.[5]
It is from this May 12, 2005 judgment that the co-trustees of the family trust and the managing co-trustees of the marital trust have also appealed.
II. ASSIGNMENTS OF ERROR
On appeal, the co-trustees assert that:
(1) the trial court erred in ordering invasions of the principal of Tim Mashburn’s interest in the marital trust;
(2) the trial court erred in finding that there were two sets of nine separate trusts (one set in the family trust and the other set in the marital trust, for a total of eighteen trusts) to which separate trustees could be appointed for each trust;
(3) the trial court erred in removing the trustees from the marital trusts and family trusts for the benefit of Helen Penton and Tim Mashburn;
(4) the trial court erred in not dismissing Tim Mashburn’s petition to terminate his one-ninth portion of the family trust, and
(5) alternatively, the trial court erred in failing to sustain the exceptions of prescription or peremption urged by the trus *1144 tees in response to both Helen Mashburn Penton and Tim Mashburn’s petitions seeking to annul the 1997 appointment of Pat Mashburn and Richard Mashburn as trustees of the family trust.
In their supervisory writ application, the co-trustees of the family trust assert that the trial court erred in failing to grant their motion for summary judgment and to dismiss Tim Mashburn’s petition to terminate the family trust because the trust could neither be terminated under La. R.S. 9:2026 nor its principal invaded under |inLa. R.S. 9:2067 based on the alleged poverty or disability of a beneficiary. We note that these issues present the same issues as the appellants’ fourth assignment of error and they will be addressed together herein below.
III. STANDARD OF REVIEW
It is well settled that an appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880, 882 (La.1993).
With regard to questions of law, the appellate review is simply a review of whether the trial court was legally correct or legally incorrect. Mashburn Marital Trust (I), 924 So.2d at 246. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. Id.
IV. LAW AND DISCUSSION
I. Invasion of the Principal of the Marital Trust (Assignment of Error Number 1)
In the October 12, 2004 judgment, the trial court ordered the managing co-trustees of the marital trust to distribute $2,000 per month to Tim Mashburn from the trust. On appeal, the managing co-trustees of the marital trust assert that the trial court erred in ordering invasions of the principal of Tim Mashburn’s interest in the marital trust, since the marital trust instrument does not provide for the invasion of the principal by any of the nine beneficiaries for any reason, Tim Mash-burn will never be entitled to the principal of the trust, and therefore not | ^ entitled to invade the principal under La. R.S. 9:2067, and Tim Mashburn failed to prove his needs in accordance with La. R.S. 9:2067.
Louisiana Revised Statutes 9:2067 provides:
The proper court may direct or permit a trustee to pay income or principal from the trust property for the necessary support, maintenance, education, medical expenses, or welfare of a beneficiary before the time he is entitled to the enjoyment of that income or principal, if the interest of no other beneficiary of the trust is impaired thereby.
In construing a trust, the set-tlor’s intention controls and is to be ascertained and given effect, unless opposed to law or public policy. In re James C. Atkinson Clifford Trust, 2000-0253 (La.App. 1st Cir.6/23/00), 762 So.2d 775, 776, writ denied, 2000-2262 (La.10/27/00), 772 So.2d 655. Parol or extrinsic evidence may be admitted to aid in construing the trust instrument only if the instrument is ambiguous and uncertain and only to explain, not contradict the instrument. Id.
*1145 In this case, the marital trust instrument provides:
4.04 If the TRUSTEE should determine, in his sole and absolute discretion, that the income of the trust is insufficient to properly provide for the support, medical care, and well being of the first income beneficiary, then he may distribute from the principal of the trust such amounts at such intervals as he may determine necessary to provide such benefits, taking into account other income and assets of the said first income beneficiary known to the trustee.
4.05 Upon termination of the interest of the first income beneficiaries, SET-TLORS children (or, if any be deceased, their children, per stirpes) shall succeed to such interest and become secondary income beneficiaries. At that point, the trustee shall distribute to or for the benefit of the secondary income beneficiaries:
all of the income of the trust, the frequency of such payments to be at least annually.
[[Image here]]
5.01 The principal beneficiaries of this trust are SETTLORS’ children (or, if any be deceased, their children, per stirpes). Unless expressly allocated otherwise in instruments transferring property to the trust (by wills or other Acts), each principal beneficiary’s share shall be an equal fraction (or, in the case of children of a deceased |1Pchild, equal fractions of only their deceased parent’s equal share). Upon termination of the trust as to each such share, as set forth helow [sic ], the share shall be distributed to the principal beneficiary, or his estate, or as otherwise herein provided.
[[Image here]]
6.01 This trust shall terminate upon the latter event to occur of: (1) the death of the Settlor who is the last to die; or (2) the death of the last child of SETTLORS.
* * *
9.02 This trust shall be held and administered subject to the “spendthrift” provisions of the Louisiana Trust Code.
Thus, the settlors’ intent is clear and unambiguous with respect to the payment of income and principal. The marital trust instrument allowed Jack and Sadie Mashburn to invade the principal of the marital trust for their support, medical care, and well being, but it did not allow their nine children to do so for any reason. Also, the marital trust instrument only provides for the annual distribution of income, and does not provide for the payment of principal until the trust terminates at the death of the last of Jack and Sadie Mashburn’s nine children.
Although La. R.S. 9:2067, as set forth hereinabove, does allow for the payment or “invasion” of the principal of the trust in certain limited circumstances involving objective needs of the beneficiary, and then, only if such invasion will not impair the interest of any other beneficiary,[6] before a court can order the invasion of the principal for the reasons permitted under La. R.S. 9:2067, the beneficiary must, at some point in the future, be “entitled to the enjoyment of that ... principal.”
Notwithstanding the lack of evidence in the record before us concerning the necessity of the distributions from the marital trust for Tim Mashburn’s support and the *1146 testimony of the managing co-trustees that the interest of the other beneficiaries has been (and will be) impaired by such distributions, Tim Mashburn |iswill never be “entitled to the enjoyment” (or otherwise have use of) the principal of the marital trust. The trust instrument does not provide for the payment of principal until the trust terminates at the death of the last of the settlors children.[7]
Accordingly, we find that Tim Mashburn was not entitled to the distributions from the principal of the trust under the provisions set forth in La. R.S. 9:2067. Since the trial court incorrectly determined otherwise, we hereby reverse the October 12, 2004 judgment of the trial court on this issue.
2. Administration of the Trust and Removal of Trustees (Assignment of Error Numbers 2, 3, and 5)
Pursuant to the judgment signed by the trial court on May 12, 2005, the trial court declared that the family trust and the marital trust each created nine separate trusts, one for each of Jack and Sadie Mashburn’s nine children (for a total of eighteen trusts), removed the co-trustees from four of the trusts established by the marital trust and the family trust, and appointed the beneficiaries of those four trusts as the successor trustees for each trust, thereby determining that different trustees could be appointed for each trust. The co-trustees assert that the trial court erred in finding that there were two sets of nine separate trusts for which separate trustees could be appointed, and in removing the trustees from the marital trusts and family trusts for the benefit of Helen Penton and Tim Mashburn.
Paragraph 1.3 of the family trust instrument provides that “[t]he property delivered to the Trustee under this Trust shall be divided into equal shares, one share for the benefit of each of the Settlors’ children, as beneficiaries of both principal and income. Each share shall be held as and shall constitute a separate Trust.”
Paragraph 9.09 of the marital trust instrument provides:
Notwithstanding any language herein contained indicating otherwise, it is the intention of this instrument to create separate trusts for each of | uthe principal beneficiaries hereinabove named and these shall be considered as separate and independent trusts for all purposes. These trusts are created in this single instrument for convenience in execution and administration of the trusts and the TRUSTEE is specifically authorized to administer the property of the several trusts together.
In Mashburn Marital Trust (I), 924 So.2d at 248, we determined that this provision, Paragraph 9.09 of the marital trust instrument, authorized the trustees to render their annual account of the nine separate trusts established by the trust instrument together. Given the clear language contained in both the family trust and the marital trust instruments, as well as our holding in Mashburn Marital Trust (I), 924 So.2d at 248, we find no error in the trial court’s determination that the marital trust instrument settled nine separate trusts (one for the sole benefit of each of the nine children of Jack and Sadie Mashburn), and that the family trust instrument settled nine separate trusts (one for the sole benefit of each of the nine *1147 children of Jack and Sadie Mashburn). Therefore, we hereby affirm that portion of the May 12, 2005 judgment of the trial court.
However, we do find that the trial court erred and incorrectly determined that separate trustees could be appointed for each of these individual trusts; and further, we find its decision to remove the present co-trustees from four of those trusts was manifestly erroneous.
As noted above, Paragraph 9.09 of the marital trust instrument provides that “the TRUSTEE is specifically authorized to administer the property of the several trusts together.” In addition to having “all of the powers that may be exercised by the trustee” under Louisiana law, Paragraph 6.2 of the family trust instrument authorizes the trustee to “comingle [sic] the assets of the separate Trusts established by this instrument.” Additionally, the testimony and documentary evidence from the trial of this matter clearly demonstrated that both the family trust and the marital trust have been considered, managed, and administered by one 11fitrustee (or one set of co-trustees) for each trust since their establishment, and that this was done so pursuant to Jack Mashburn’s wishes.
Considering the above provisions and the evidence at trial, we find that Jack and Sadie Mashburn intended to provide the trustees of the marital trust with authority and power over all of the marital trusts jointly, and that they intended to provide the trustees of the family trust with authority and power over all of the family trusts jointly. Thus, the trial court’s judgment ordering that separate trustees be appointed for each of the marital trusts and each of the family trusts is clearly contrary to the settlors’ intent and is hereby reversed.
Moreover, without giving any reasons, the trial court’s judgment further removed the co-trustees of the family trust and the co-trustees of the marital trust from their office. Based on the evidence contained in the record before us, we find this was manifestly erroneous.
Louisiana Revised Statutes 9:1789(A) provides: “A trustee shall be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause.”[8] This statute contemplates more than a mere technical violation of the trust code as grounds for removal of a trustee. Fontenot ex rel. Fontenot v. Choppin, 2002-0082 (La.App. 1st Cir.12/20/02), 836 So.2d 322, 324. In seeking to remove the co-trustees of the family trust and the marital trust, Helen Penton and Tim Mashburn alleged that the August 1997 order appointing Pat Mashburn and Richard Mashburn as trustees was a nullity because they never consented to it, the trustees had failed to render annual accounts of their administration of the trust, the trustees had failed to distribute income as required by the trust instruments, and the trustees had provided incomplete, misleading, and false information to the beneficiaries.
|1fiThe evidence at trial established that on May 16, 1997, at a Mashburn “family meeting,” Rita Mashburn resigned as trustee of the family trust. According to the *1148 testimony of Pat Mashburn, Rita Ann Mashburn, and Richard Mashburn, it was Helen Penton who nominated Pat Mash-burn and Richard Mashburn to serve as the co-trustees of the family trust, and thereafter, they were elected as co-trustees by a majority of the nine Mashburn children. Tim Mashburn admitted that he was present at this meeting, and both he and Helen Penton signed the minutes from the “family meeting” which detailed the events that had occurred. Thereafter, Jack Mashburn presented the copies of the minutes signed by eight of the nine beneficiaries of the trust to his attorney, Mark Rolling. Mark Rolling then prepared the August 1997 joint petition and order in accordance with Jack Mashburn’s wishes. Additionally, we note that while Tim Mash-burn alleged that he was neither served with nor given notice of the 1997 petition seeking to have Pat Mashburn and Richard Mashburn appointed as co-trustees of the family trust, and that he did not learn of the existence of that petition and order until February 22, 2005, we also note that in Tim Mashburn’s petition to terminate the family trust, filed on October 16, 2003, he alleges in paragraph 2 that “[t]he set-tlors are now deceased, and on August 19, 1997 the Court appointed [Pat] Mashburn, Sr. and Richard Mashburn to serve as successor co-trustees of the [family trust] ... and they continue to so serve.” Thus, we find that he had knowledge of that order at least as early as October 16, 2003.
Based on the evidence, we find no merit to Tim Mashburn’s and Helen Penton’s contentions that Pat Mashburn and Richard Mashburn were improperly appointed as co-trustees of the family trust and that they should be excused as trustees of the family trust because the judgment ordering their appointment as trustees was a nullity.
Moreover, we also find no evidence in the record supporting Tim [17Mashburn’s allegations that the co-trustees of the family trust failed to provide annual account-ings to the beneficiaries and failed to distribute the income from the trust. The undisputed testimony of Michael Mash-burn, Michael F. Smith, C.P.A., Richard Mashburn, and Rita Ann Mashburn indicated that accountings were prepared and presented by the co-trustees to the beneficiaries annually, and further, that the income of the trust was distributed annually, unless there was no income to distribute.
With regard to the allegations that the trustees had provided incomplete, misleading, and false information to the beneficiaries, the evidence indicated that the co-trustees of the family trust and the managing co-trustees of the marital trust started negotiating a settlement with Tim Mash-burn in an effort to end these proceedings. During the course of the negotiations, the co-trustees proposed to Tim Mashburn a “hypothetical liquidation of all of the assets of both Trusts (including any transfers from the estate [of Jack Mashburn]” the purpose of which “is to arrive at a per share value of the assets ... [to] seek a settlement with Tim Mashburn.” Tim Mashburn asserted that the values placed on these assets were false, and as such, the trustees had provided him with incomplete, misleading, and false information. However, it was the trial court, who characterized the trustees’ settlement offer as a “low-ball,” that repeatedly stated on the record that such actions taken in the course of settlement negotiations were not sufficient to remove the co-trustees from their office.
Lastly, while there was an overwhelming amount of evidence demonstrating that Tim Mashburn and Helen Penton have an acrimonious relationship with the *1149 co-trustees of the family trust and the managing co-trustees of the marital trust, mere hostility or incompatibility between the trustee and a beneficiary is not sufficient grounds for removal, unless the hostility interferes with or impairs the proper administration of the trust. See Albritton v. Albritton, 622 So.2d 709, 713 18(La.App. 1st Cir.1993). We find no such evidence in the record before us. While it is clear that Tim Mashburn and Helen Penton do not like the managing co-trustees of the marital trust and the co-trustees of the family trust administering (or controlling) their interests in the trusts, absent “cause” (ie. proof of wrongdoing or the breach of the fiduciary duty), the present co-trustees should not be removed.
Based on our review of the record, we cannot say that cause exists to remove the trustees from the family trust or the trustees (and managing co-trustees) of the marital trust from their office. To the extent that the trial court found otherwise was clearly wrong, and we hereby reverse the May 12, 2005 judgment of the trial court removing the trustees from the marital trusts and family trusts for the benefit of Helen Penton and Tim Mashburn.[9]
3. Petition to Terminate the Family Trust (Assignment of Error Number 4 and Supervisory Writ Application)
Tim Mashburn petitioned for his family trust to be terminated and its assets distributed to him in accordance with La. R.S. 9:2026, or alternatively, that the court order the invasion and distribution of principal from his family trust for his benefit on account of his medical and financial condition and needs in accordance with La. R.S. 9:2067. Based on the undisputed material facts in the record, the co-trustees of the family trust contend that Tim Mashburn cannot terminate the family trust nor can he invade its principal; and therefore, the trial court erred in failing to grant its motion for summary judgment and dismiss Tim Mashburn’s petition.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. See Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 19230; Allen v. State ex. rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, 2002-1072 (La.4/9/03), 842 So.2d 373, 377. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions of file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover need only point out to the court that there is an absence of factual support for *1150 one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentia-ry burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Robles v. Exxon-Mobile, 2002-0854 (La.App. 1st Cir.3/28/03), 844 So.2d 339, 341.
According to the family trust instrument, the settlors stated that it was their “intent for this Trust to satisfy the legal requirements for a Class Trust and a Trust that satisfies the legitime due any beneficiary from the Settlors.” Paragraphs 1.2 and 1.3 of the family trust instrument provide that the settlors’ nine children are the beneficiaries of both income and principal. Additionally, Paragraph 4.1 provides that “[t]he term of each of the Trusts established pursuant to this instrument shall be for the maximum time allowed by the Louisiana Trust Code for the existence of class trusts.” Since the family trust included all of the settlors’ nine children, it is a class trust which was closed upon the death of Jack Mashburn, the second parent ^(and settlor) to die. See La. R.S. 9:1891 and 9:1896. When the class members of a trust are the beneficiaries of both income and principal, as in this case, “[t]he trust shall continue with respect to the share of a class member for his lifetime unless the trust instrument stipulates a shorter term.” La. R.S. 9:1906; see also La. R.S. 9:1901. Furthermore, Paragraph 5.1 of the family trust instrument provides: “Each trust created by this instrument shall be held subject to the maximum restrain on voluntary or involuntary alienation by the beneficiary permitted by the provision of the Louisiana Trust Code.” Based on these provisions, the settlors intended that Tim Mashburn’s interest in his trust will not terminate until his death and that his interest in his trust not be alienated in any way.
Nevertheless, Tim Mashburn seeks to terminate the family trust for his benefit alleging that he is destitute, handicapped, unable to work, and in need of medical attention; that his resources without distributions from his trust were insufficient to provide for his necessary support, maintenance, medical expenses, and welfare; and that he cannot qualify for public assistance because of his interest in the family trust. Alternatively, Tim Mashburn sought to invade the principal of his family trust for the payment of his monthly expenses.
Louisiana Revised Statutes 9:2026(1), entitled “Change of circumstances,” provides that “[t]he proper court may order the termination or modification of a trust, in whole or in part, if ... [t]he continuance of the trust unchanged would defeat or substantially impair the purposes of the trust.”[10] The modification or deviation from the terms of trust provisions based on La. R.S. 9:2026(1) depends upon an analysis of four essential elements: (1) what is the purpose(s) of the trust; (2) what are the change of circumstances, if any; (3) whether the result of the change of circumstances was anticipated by the settlor; and (4) whether the change [g1of *1151 circumstances not anticipated by the set-tlor defeats or substantially impairs the purposes of the trust. In re James C. Atkinson Clifford Trust, 762 So.2d at 776.
Thus, in this case, in order to terminate or modify the family trust under this provision, Tim Mashburn must prove that the purpose of the family trust was to provide for the needs of the beneficiaries, that there has been a change of circumstances not anticipated by the settlors (his parents), and that this change of circumstances not anticipated by his parents defeats or substantially impairs the purpose of the trust. Alternatively, to invade the principal of family trust, Tim Mashburn must establish that at some point in the future, he would be “entitled to the enjoyment of that ... principal,” that the distributions from the principal of the family trust property were necessary for his support, maintenance, education, medical expenses, or welfare, and that the invasion of the principal would not impair the interest of any other beneficiary. See La. R.S. 9:2067; Read v. U.S., Dep’t of Treasury, 169 F.3d 243, 251 (5th Cir.1999).
In moving for summary judgment, the co-trustees submitted that there was an absence of factual support for Tim Mash-burn’s actions under both La. R.S. 9:2026 and 9:2067, because Tim Mashburn has failed to make any showing that the purpose of the trust was to provide for his needs, that there has been a change of circumstances not anticipated by his parents, and that this change of circumstances not anticipated by his parents defeats or substantially impairs the purpose of the trust. Additionally, the co-trustees submit that Tim Mashburn has failed to sufficiently establish his needs, to support his allegations with medical or other corroborating evidence, to show that he will ever be entitled to the enjoyment of the principal of the trust, and to show that the interest of no other beneficiary of the trust would be impaired by the invasion of the principal. Accordingly, the co-trustees contend that since there is an absence of factual support for these essential elements of Tim Mashburn’s action to terminate the trust or invade its principal, ^summary judgment should have been granted and Tim Mashburn’s petition dismissed.
In opposition to the co-trustees’ motion for summary judgment, Tim Mashburn submitted his own affidavit which stated: “I need the income and assets of my [family trust] for my support, maintenance, medical expenses and welfare. I am handicapped and very limited in the work I may do. My monthly expenses ... [t]otal $2,017.”
Based on our de novo review of this matter, we find that this evidence submitted by Tim Mashburn was insufficient to meet his burden of establishing that there were genuine issues of material fact as the essential elements of his actions under La. R.S. 9:2026 and 9:2067 so as to preclude summary judgment in favor of the co-trustees. While Tim Mashburn seeks to terminate the family trust, and alternatively to invade its principal for the payment of his monthly expenses, there is no evidence demonstrating that this was the purpose of the trust or that there was a change of circumstances not anticipated by Jack and Sadie Mashburn. Accordingly, the trial court should have granted the motion for summary judgment filed by the co-trustees of the family trust and dismissed Tim Mashburn’s petition to terminate the family trust. Therefore, we hereby grant the supervisory writ filed by the co-trustees of the family trust; we reverse the March 9, 2005 judgment denying the *1152 co-trustees motion for summary judgment; and we hereby render judgment granting the motion for summary judgment and dismissing Tim Mashburn’s petition to terminate the family trust.
VI. CONCLUSION
For the above and foregoing reasons, we reverse the October 12, 2004 judgment on appeal because Tim Mashburn was not entitled to the distributions from the principal of the marital trust under La. R.S. 9:2067; we affirm the May 12, 2005 judgment insofar as it declares that the marital trust and the family trust | ^each created nine separate trusts (for a total of eighteen trusts) and reverse that judgment in all other respects; and we grant the supervisory writ and reverse the March 9, 2005 judgment denying the motion for summary judgment filed by the co-trustees of the family trust, grant the motion for summary judgment, and dismiss Tim Mash-burn’s petition to terminate the family trust.
All costs of this appeal are assessed to the appellees, Timothy R. Mashburn and Helen Mashburn Penton.
OCTOBER 12, 2004 JUDGMENT REVERSED; MAY 12, 2005 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; WRIT GRANTED AND MADE PEREMPTORY.
GUIDRY, J., concurs in the result.

. In a companion case to this appeal, also rendered on this date, the co-trustees of the family trust separately appealed another judgment of the trial court ordering them to pay Tim Mashburn the sum of $2,000 per month from the family trust. Finding that the trial court erred, we reversed. See In re Mashburn Marital Trust, 2006-1753, 2006-1754 (La. App. 1st Cir. 12/28/06), 2006 WL 3804633 (unpublished opinion) ("Mashburn Marital Trust (inn.

. Louisiana Revised Statutes 9:2026 provides:
The proper court may order the termination or modification of a trust, in whole or in part, if:
(1) The continuance of the trust unchanged would defeat or substantially impair the purposes of the trust.
(2) Except as otherwise provided by the terms of the trust, a trustee has determined that the market value of a trust is less than one hundred thousand dollars and that, in relation to the costs of administration of the trust, the continuance of the trust unchanged would defeat or substantially impair the purposes of the trust. In such a case, the court may provide for the distribution of the trust property, including principal and undistributed income, to the beneficiaries in a manner which conforms as nearly as possible to the intention of the settlor and the court shall make appropriate provisions for the appointment of a tutor in the case of a minor beneficiary. In the event of the termination or modification of a trust under the provisions of this Paragraph, the trustee shall not be subject to liability for such termination or modification.

. Louisiana Revised Statutes 9:2067 provides:
The proper court may direct or permit a trustee to pay income or principal from the trust property for the necessary support, maintenance, education, medical expenses, or welfare of a beneficiary before the time he is entitled to the enjoyment of that income or principal, if the interest of no other beneficiary of the trust is impaired thereby.

. On May 23, 2006, this court, ex proprio motu, recalled the rule to show to cause previously issued concerning the La. C.C.P. art. 1915(B) designation of the October 12, 2004 judgment and the correctness of the record on appeal. In doing so, this court determined that, while the October 12, 2004 judgment ordering distributions to Tim Mashburn was not a final appealable judgment and was not properly designated as final under La. C.C.P. art. 1915(B) considering the factors set forth in Motorola, Inc. v. Associated Indemnity Corp., 2002-1351 (La.App. 1st Cir.10/22/03), 867 So.2d 723, 732, under People of the Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752, 753 (1968), the judgment could be considered on the appeal of the final judgment in this matter, i.e. the judgment of May 12, 2005, hereinafter discussed.

. Mashburn Real Estate, L.L.C. was formed by the co-trustees of the family trust on the advice of their attorney when the family trust acquired the leasehold interest in the Gateway Shopping Center in Ponchatoula, Louisiana. (The family trust already owned the land on which the shopping center was located.)

. See Read v. U.S., Dep't of Treasury, 169 F.3d 243, 251 (5th Cir. 1999).

. However, we do note that under the terms of the marital trust instrument, Tim Mash-burn is entitled to the enjoyment of the income.

. Paragraph 8.02 of the marital trust instrument provides, in part, that: "TRUSTEES shall serve for life unless they resign, become disqualified, or are removed from office for legal cause,” and the family trust instrument does not contain provisions for the removal of trustees.

. As we have found that the judgment removing the trustees was reversible on the merits, we pretermit discussion of the appellants alternative assignment of error, assignment of error number 5, that the trial court erred in failing to sustain the trustees exceptions of prescription (or peremption) filed in response to Helen Mashburn Penton’s and Tim Mash-burn’s petitions.

. Louisiana Revised Statutes 9:2026(2) also provides for the early termination of a trust when a trustee has determined that the assets of a trust are less than $100,000 and that further administration of the trust would cost more than the income produced by the trust. This provision is inapplicable to the issues raised by this appeal and writ application.