986 So.2d 175 (2008)
Carolyn Cordell THOMAS, et al., Plaintiffs-Appellants
v.
Donald L. KNEIPP, Trustee, and J. Hardeman Cordell, Defendants-Appellees.
No. 43,228-CA.
Court of Appeal of Louisiana, Second Circuit.
May 28, 2008.
*177 Theus, Grisham, Davis & Leigh, by Paul D. Spillers, Monroe, for Plaintiffs-Appellants.
Hayes, Harkey, Smith & Cascio, by Thomas M. Hayes, III, Donald L. Kneipp, Monroe, for Defendant-Appellee.
*178 Snellings, Breard, Sartor, Inabnett, & Trascher, by Charles C. Trascher, III, Monroe, for Defendant-Appellee J. Hardeman Cordell.
Before GASKINS, CARAWAY and PEATROSS, JJ.
GASKINS, J.
This appeal concerns an irrevocable inter vivos trust established by Bernice C. Woods in favor of her children, Carolyn Cordell Thomas[1] and J. Hardeman Cordell, and her five grandchildren. The daughter and her three children filed suit, claiming improprieties by the son and the trustee. Following the son's dismissal from the suit, the plaintiffs appeal from an adverse judgment in favor of the trustee. We affirm in part and reverse in part.

FACTS
In August 1984, Mrs. Woods, as settlor, established five irrevocable inter vivos trusts, one for the principal benefit of each of her five grandchildren. The trusts, which were created by a single trust instrument, were collectively named the Bernice C. Woods Grandchildren Trusts-1984. Mrs. Woods' son and daughter were income beneficiaries of each of the trusts. Each of the grandchildren was a co-income beneficiary and a principal beneficiary of his respective trust. To fund the trusts, Mrs. Woods made an act of donation transferring to the trustee various mineral interests. These mineral interests made up the principal of the trusts, each trust owning an undivided equal interest of the mineral properties. These mineral interests produced income during the years. Mrs. Woods named her attorney, Donald L. Kneipp, as trustee. Mr. Kneipp was also the attorney of Mrs. Woods' son, Mr. Cordell, until December 2006.
Section I of the trust instrument established the beneficiaries of the trusts. It also stated:
1.3 The income of each trust shall be distributed to the income beneficiaries of each trust ... by the Trustee to the extent deemed advisable by the Trustee in his sole discretion, and income not distributed shall be accumulated and added to the principal of the trust; provided, however that in determining the amount of income to distribute, the Trustee shall take into account the income required by the income beneficiary necessary to provide for his or her comfort, support, maintenance and benefit, according to his or her usual present standard of living, but only after taking into account all other available income and assets of the beneficiary. In determining the amount of income to distribute from any trust to my son J. Hardeman and my daughter, Carolyn, the Trustee shall consider the amount of income produced by all five (5) of the trusts created herein and shall distribute income equally from the five (5) trusts to them, in order to maintain their standard of living at the level to which they are accustomed, but only after taking into account all of their other income and assets.
1.4 If the income of any trust is not sufficient to provide for the comfort, support, maintenance and benefit of any income beneficiary of any trust, according to his or her usual present standard of living, then the Trustee shall pay or apply all or such part of principal of the trust as may be necessary to maintain the beneficiary in this manner, provided however, that if a principal distribution is made to Carolyn Cordell Young, it shall be first made equally from the *179 Christopher Chambless Foster Trust No. III  1984, the Cullen Cordell Foster Trust No. III  1984, and the Fred Wayne Foster, Jr. Trust III  1984, and, only after taking into account the funds available to her from other sources; further provided, that if a principal distribution is made to J. Hardeman Cordell, it shall be first made equally from the John Hardeman Cordell, V Trust No. III  1984 and the John Sherouse Cordell Trust No. III  1984, and, only after taking into account the funds available to him from other sources.
Section VII of the trust instrument set forth the powers of the trustee. In relevant part, it stated:
7.1 The Trustee shall have the following powers with respect to these Trust[s], to be exercised as the Trustee, in his discretion, determines to be in the best interest of the beneficiaries, without court order:
A. The trustee shall have all of the powers that may be exercised by a trustee under Louisiana law, including, but not limited to, those powers that trustees are permitted to exercise under the provisions of the Louisiana law.
B. In addition to the powers provided in Paragraph A, above, the Trustee shall have the following powers with respect to the Trust, to be exercised as the Trustee in his discretion determines to be in the best interest of the beneficiary of the Trust, but without in any way limiting any of the other powers given by law or by other provisions of this instrument to the Trustee.
. . . .
2. At any time or from time to time in his uncontrolled discretion to insure the life of any beneficiary of these Trusts, or to insure the life of any other person on whose life any beneficiary may have an insurable interest, in favor of the beneficiary. The proceeds of the policy or policies of such insurance shall be payable to these Trusts, and the premiums on the policy or policies of insurance shall be paid from the Trust. The Trustee may apply any or all dividends on any such policy or policies of insurance to the payment of premiums. The Trustee may at any time, or from time to time, surrender any such policy of insurance and obtain its cash surrender value, or may borrow against its value. The proceeds of each policy, whether collected before or after the death of the named insured, shall be added to the principal of these Trusts. Any such insurance shall be in such amount or amounts as the Trustee may determine, and in such forms as the Trustee may deem wise, by term insurance, straight life insurance, stated period payment insurance, endowment insurance or any other kind of life insurance.
3. To lend all or any part of the corpus of these Trusts to the Settlor for any purpose or purposes....
. . . .
18. The Trustee, in his sole discretion, shall determine which receipts shall be charged or credited to income and which to principal in any manner that fairly and equitably reflects a proper allocation between principal and income.
From 1984 to June 1991, the trustee made distributions to both the settlor's daughter, Mrs. Thomas, and her grandson, Chris Foster. From July 1991 to November 2004, no distributions were made *180 to beneficiaries. Mrs. Woods died in September 2004. From 2004 to 2006, Mr. Cordell, Mrs. Woods' son, received distributions.
In October 2006, Mrs. Thomas and her three children, Christopher Chambless Foster, Cullen Cordell Foster, and Fred Wayne Foster, Jr., filed "a motion" against her brother, Mr. Cordell, and the trustee. Among other things, they alleged that the trustee failed to make annual accountings to them and made impermissible distributions to Mr. Cordell. They demanded restitution and sought to have the trustee removed or forced to provide security, even though the trust specifically dispensed with the requirement that the trustee post security. They requested a contradictory hearing and judgment in their favor following summary proceedings.
In May 2007, Mr. Kneipp filed a response to the plaintiffs' motion. He admitted that he had not furnished formal accountings but stated that the trust records have always been open and available for review by any beneficiary. Mr. Kneipp further asserted that under the trust provisions, he had sole discretion to make distributions. Additionally, he alleged that under the trust provisions he is relieved from liability in connection with the trust administration except for a breach of the duty of loyalty to any beneficiary; he denied any such breach.
Mr. Kneipp also filed into the record his annual accounts for administration of the trust from August 1983 to February 2007. The plaintiffs filed an opposition to the annual accounts as insufficient. Among other things, they asserted that the accounts failed: (1) to adequately identify the receipts and disbursements of the five separate trusts and (2) to reflect the creation of any reserve for depletion of the mineral interests owned by the trust, as required by the Louisiana Trust Code. They also alleged that the trustee improperly made disbursements to the trustee and to Mrs. Woods, who was the settlor but not a beneficiary of the trust, as well as payments of $140,865.41 for insurance premiums on a policy not owned by the trusts.
In the meantime, Mr. Cordell filed an exception of unauthorized use of summary judgment and an exception of no cause of action. The trial court overruled the exception of no cause of action but sustained the exception of unauthorized use of summary proceedings. The plaintiffs' motion against Mr. Cordell was dismissed without prejudice, and he is no longer a party to this suit or appeal.
The plaintiffs filed an amended motion in July 2007. They re-urged their original allegations, as well as the ones set forth in their opposition to the trustee's accounting. The plaintiffs again requested a contradictory hearing and judgment in their favor following summary proceedings.
In September 2007, the trustee filed a response to the plaintiffs' opposition to his annual accounts. He asserted that there was no creation of a depletion reserve because the settlor did not intend for one to be established; the trust was established solely as an estate planning vehicle to avoid federal estate taxes and state inheritance taxes. The trustee also stated that the premiums paid were for life insurance on Mrs. Woods and that, upon her death, her son and her daughter received the proceeds as her beneficiaries. He admitted that certain disbursements were made to Mrs. Woods, but denied that they were made in violation of the trust.
A hearing was held on September 28, 2007, at which testimony was given by the trustee and Mrs. Thomas. Mr. Kneipp acknowledged making distribution of $15,000 to $16,000 to the settlor; however, *181 he noted that she had made additional contributions of $27,000 to $28,000 to the trust over the years. He also admitted distributions to Mr. Cordell totaling $86,000 from 2004 to 2006. However, he also testified that from 1984 to 1991, he disbursed more than $300,000 to Mrs. Thomas and about $35,000 to one of her sons. He did not require written documentation of economic need from any of them. He also allocated all distributions to income and none to principal. He testified that he believed that the provisions of the trust agreement authorized his actions, including the payment of the premiums on the life insurance on Mrs. Woods. Although the insurance policy was not owned by the trusts at issue here, Mr. Kneipp testified that he understood that Mrs. Thomas and Mr. Cordell were equal beneficiaries of the policy. As to the lack of a depletion reserve for the mineral rights, he testified that Mrs. Woods made the decision at the outset that she did not want to set up a depletion reserve.
At the conclusion of the hearing, the trial court noted that the litigation was caused by "bad blood" among family members after it was discovered that the settlor had changed her will. The court characterized the complaints about the disbursements to the settlor as "shallow and hollow." It found that the trustee acted in the best interest of the trust. While the trustee did not routinely provide an annual accounting, he did one when required to do so. The court found that no evidence contradicted the testimony of the trustee that the persons to whom disbursements were made were in need. The trial court also observed that the plaintiffs who were making these "complaints on technical disagreements" were the same people who had benefited from the way the trust was operated for the last 20 years. The court ordered that the trustee render annual accountings in the future.
Judgment was signed October 16, 2007. It dismissed all claims against the trustee, overruled the plaintiffs' objections to the trustee's accounting, and assessed all costs to the plaintiffs. The trustee was instructed to make annual accountings within 90 days after year's end.
The plaintiffs appeal.

LOUISIANA TRUST CODE

Law
A trustee shall administer the trust as a prudent person would administer it. In satisfying this standard, the trustee shall exercise reasonable care and skill, considering the purposes, terms, distribution requirements, and other circumstances of the trust. La. R.S. 9:2090(A).
A trustee is required to administer the trust solely in the interest of the beneficiary. La. R.S. 9:2082. Failure to do so is considered a breach of the duty of loyalty. See Comment (c) under La. R.S. 9:2082. The duty of loyalty is the fundamental duty owed by a trustee as a fiduciary. Because of that fact, an exculpatory "provision in the trust instrument is not effective to relieve the trustee from liability for breach of the duty of loyalty to a beneficiary...." La. R.S. 9:2206(B); Albritton v. Albritton, 622 So.2d 709 (La. App. 1st Cir.1993).
The Trust Code permits the trust instrument to exculpate a trustee from all liability except for breach of trust committed in bad faith or for breach of the duty of loyalty. La. R.S. 9:2206; Maginnis v. Maginnis, 449 So.2d 573 (La.App. 1st Cir. 1984), writ denied, 456 So.2d 1015 (La. 1984). The trust instrument in the instant case had such a provision.
*182 The nature and extent of the duties and powers of a trustee are determined from the provisions of the trust instrument, except as otherwise expressly provided in the Trust Code, and, in the absence of any provisions of the trust instrument, by the provisions of this Part and by law. La. R.S. 9:2061. A provision of the trust instrument that purports to limit a trustee's duty of loyalty to the beneficiary is ineffective, except to the extent permitted by this Part. La. R.S. 9:2062.
The trustee may be given discretion to allocate income to the income beneficiaries or to the principal accounts. La. R.S. 9:1961(c) provides:
Except as otherwise provided with respect to the legitime in trust, a settlor may give a trustee who is not a beneficiary of the trust discretion to allocate income in different amounts among the income beneficiaries or to allocate some or all of the income to principal. The settlor may allow income that is not allocated by the end of the year in which it is received to remain unallocated by the trustee until a future year. Any income unallocated when the trust terminates shall be allocated to principal.
The trustee may also be given discretion to determine the time and frequency of distributions, as set forth in La. R.S. 9:1963:
Except as otherwise provided with respect to class trusts and the legitime in trust, a settlor may stipulate when the income allocated to a beneficiary shall be distributed to him, or may stipulate that the trustee has discretion to determine the time and frequency of distribution. If the trust instrument allows the trust to retain income received in a year of the trust and distribute it in a later year, the income retained at the end of the year is deemed to be accumulated, unless the trust instrument requires the undistributed income to be added to principal. Objective standards are not required for the accumulation of income or for the distribution of accumulated income.
A trustee may incur expenses necessary to carry out the purposes of the trust and not forbidden by the provisions of the trust instrument, and other expenses authorized by the provisions of the trust instrument. La. R.S. 9:2117.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). When factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.

Discussion
A review of the accountings submitted by the trustee shows that Mrs. Thomas received about $300,000 from the trust from 1983 to 1991. (In fact, in 1987 alone, she received $86,900  almost $1,000 more than the total amount she complains of her brother later receiving.) During the same time period, Mrs. Thomas' son, Chris Foster, received more than $26,000; another $3,000 was disbursed jointly to Mrs. Thomas and Chris Foster, as well as another $5,300 for expenses related to Chris. From 2004 to 2006, Mr. Cordell received a total of $86,000 in distributions.
The trust document gives the trustee sole discretion for distributing income to *183 the income beneficiaries. In making the determination of the amount to distribute from any trust to the settlor's son or daughter, the trust declares that "the Trustee shall consider the amount of income produced by all five (5) of the trusts created herein and shall distribute income equally from the five (5) trusts to them, in order to maintain their standard of living at the level to which they are accustomed, but only after taking into account all of their other income and assets." The trustee testified that after experiencing health problems, Mr. Cordell explained to the trustee his need for three distributions from the trust. The trust gives the discretion to the trustee to make these unequal distributions, using his own judgment as to the need. The trustee's uncontradicted testimony reveals that he applied the exact same criteria to the distributions to Mrs. Thomas and/or her son as he did to the disputed distributions to Mr. Cordell.
The plaintiffs complain of disbursements made by the trustee to their own mother/grandmother, the settlor of the trust, when she was in financial need. Besides the initial donation of the mineral interest to the trust, Mrs. Woods also made some cash deposits into the trust. Mrs. Woods deposited approximately $28,000 into the trust account and was given about $16,000 in distributions personally or on her behalf. We note that the trust instrument allowed the trustee to loan "all or any part of the corpus of these Trusts" to the settlor for any purpose. These distributions were made informally to Mrs. Woods. Because we find her monetary deposits exceeded the "loans" to her, we find no breach of the trustee's duty of loyalty. We do caution that this informality in the accounting for these "loans" could have easily resulted in a breach.
As to payment of $139,500 in premiums on the settlor's life insurance policies, the testimony established that the policy in question was not owned by the trust at issue. However, according to the information possessed by the trustee, Mrs. Thomas and Mr. Cordell, the settlor's children, were the beneficiaries of that policy. Mrs. Thomas did not dispute this during her testimony. The plaintiffs also complain that the trustee distributed "trustee fees" to a local bank that was not a trustee of the instant trust but of the settlor's 1983 life insurance trust. This insurance issue does cause the court some concern, but had the insurance policy been payable to the trust, Mrs. Thomas and Mr. Cordell could have still received the totality of the proceeds. The trust allows the trustee "to insure the life of any other person on whose life any beneficiary may have an insurable interest, in favor of the beneficiary." Again we note the uncontradicted evidence that Mrs. Thomas  like her brother  was ultimately a beneficiary of the insurance at issue. The trustee received no benefit as a result of this insurance. As against the trustee on the particular facts of this issue, we find the plaintiffs failed to prove the trustee should be cast with damages.[2]
The plaintiffs also charged that the trustee commingled funds. At issue was whether the trust allowed all of the income to be held as income, as the trustee suggests, or if La. R.S. 9:1961 mandated that the non-disbursed income be allocated to the five principal accounts of the principal beneficiaries. The trust allows the trustee, in his sole discretion, to determine *184 which receipts to be charged or credited to income and which to principal "in any manner that fairly and equitably reflects a proper allocation between principal and income." La. R.S. 9:1961 instructs that the "settlor may allow income that is not allocated by the end of the year in which it is received to remain unallocated by the trustee until a future year."
Articles 1961 and 1963 of the Trust Code allow the trust to grant the trustee the power of accumulating income received in one year, and distributing it the next year. Yet, we find no such express power in this trust to accumulate income and to have that income not become principal of the five trusts after one year. Instead, subsection 1.3 says that "income not distributed shall be accumulated and added to the principal of the trust." Therefore, since the trust does not contemplate the accumulation of income beyond the year in which it is earned, our reading of these articles convinces us that the income should have been transferred and added into the five principal accounts when disbursements of the total yearly income were not made in a given year.
The plaintiffs appear to argue that the trust was breached when the income for a given year was less than the disbursements to Mr. Cordell for that year. This ignores the trustee's power to invade principal. The trust provides under subsection 1.4, that the income beneficiaries, both Mrs. Thomas and Mr. Cordell, may be paid all the income, and then may also be paid from all the principal accounts, after first accessing their respective sons' principal accounts. After making the determination that Mr. Cordell needed the money, the trustee was within his powers to draw money from the yearly income received, then from the principal accounts of Mr. Cordell's children, and last from his nephews' principal accounts. As the trust provisions allow the trustee to invade the principal accounts of the principal beneficiaries upon showing a need by Mrs. Thomas or Mr. Cordell, these allocations made by the trustee to Mr. Cordell were permissible.
While certain of the trustee's actions might be construed as "technical" violations of the trust instrument, on the record before us, we are unable to find that these actions were breaches of his duty of loyalty to the beneficiaries. Upon the record before us, we can only conclude that the trustee consistently acted in the best interest of the beneficiaries. Like the trial court, we observe that the parties now making these "complaints on technical disagreements" were the same people who had benefited from the way the trust was operated for the last 20 years.
We find that the trial court did not err in failing to find that the trustee committed breaches of his duty of loyalty to the beneficiaries.

ANNUAL ACCOUNTINGS
The plaintiffs contend that the trial court erred in failing to find that the trustee violated the Trust Code by not rendering annual accountings for each of the five separate trusts for 22 years. They also assert that the trial court erred in failing to find deficient the belated accounting rendered after this litigation began.
A trustee is under a duty to a beneficiary to keep and render clear and accurate accounts of the administration of the trust. La. R.S. 9:2088(A). A trustee shall render to a beneficiary or his legal representative at least once a year a clear and accurate account covering his administration for the preceding year. Each annual account shall show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during *185 the year, and shall set forth a list of all items of trust property at the end of the year. La. R.S. 9:2088(B).
A trustee shall give to a beneficiary upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and permit him, or a person duly authorized by him, to inspect the subject matter of the trust, and the accounts, vouchers, and other documents relating to the trust. La. R.S. 9:2089.
La. R.S. 9:2206 provides:
A. The trust instrument may relieve the trustee from liability, except as provided in Sub-sections B and C of this section.
B. A provision in the trust instrument is not effective to relieve the trustee from liability for breach of the duty of loyalty to a beneficiary or for breach of trust committed in bad faith.
C. A provision in the trust instrument is not effective to relieve the trustee from liability if it is inserted as a result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor.
The trustee admitted during his testimony that he did not make formal annual accountings. However, he maintained that the information was available to the beneficiaries any time they wished it. Likewise, he filed a formal accounting in the record when the issue was raised. The trial court has instructed the trustee, henceforth, to make annual accountings.
We find the formal accounting in the record insufficient. The trust is structured so that the income is received in five trust accounts. The trustee decided that the receipts are initially attributed to income, which he has the discretion to decide. Mrs. Thomas and Mr. Cordell can be distributed this income, equally from the individual trusts. As discussed above, since the trust does not allow accumulated income, the income remaining in the trusts at year's end must be allocated to the principal of the trusts. If a distribution is made to Mrs. Thomas or Mr. Cordell in excess of the income of the trusts, the principal accounts may be accessed, but with her or his own sons' being depleted first. None of the principal beneficiaries have the right to access the income or principal from the trusts of the others. The method of accounting used by the trustee did not comport with the allocation of yearly undistributed income to the principal accounts of the five trusts or the manner in which the principal accounts were accessed when the disbursements exceeded the income. The court orders that the trustee cause a new accounting to be made at the trust's expense, in accordance with this opinion, by a certified public accountant (CPA).[3] We further direct that the trustee send copies of the new accounting to all income and principal beneficiaries.

*186 MINERAL DEPLETION ACCOUNTS
La. R.S. 9:2152 regarding proceeds of mineral interests in trust provides, in part, that proceeds from any interest in oil, gas, or other minerals shall be allocated to principal until such time as the cost for such interest (including both tangible and intangible drilling cost) has been fully recovered; thereafter, such proceeds shall be apportioned between principal and income so that twenty-seven and one-half percent of the gross proceeds (but not to exceed 50 percent of the net proceeds remaining after payment of all expenses, direct and indirect, computed without allowances for depletion) shall be allocated to a reserve for depletion to be added to principal and the balance of the gross proceeds, after payment therefrom of all expenses, direct and indirect, shall be allocated to income. La. R.S. 9:2142 provides that allocations of income and principal are made in accordance with this section in the absence of contrary provisions in the trust instrument. The provisions of the Louisiana Trust Code are accorded a liberal construction in favor of freedom of disposition. See La. R.S. 9:1724; Succession of Weiss, 96-1570 (La.App. 4th Cir.1/22/97), 687 So.2d 1084, writ denied, 97-0480 (La.4/4/97), 692 So.2d 419.
In accordance with La. R.S. 9:2142, the settlor was free to favor the income beneficiaries and dispense with the protections of La. R.S. 9:2152 against the eventual depletion of the principal of these mineral interests. If the settlor had given no indication of the allocation of proceeds between income and principal that he intended, La. R.S. 9:2152 would provide the apportionment. However, the settlor is not required to override La. R.S. 9:2152 in explicit and precise terminology. Instead, the settlor's intent should be effectuated. Succession of Weiss, supra.
In construing a trust, the settlor's intention controls and is to be ascertained and given effect, unless opposed to law or public policy. Richards v. Richards, 408 So.2d 1209 (La.1981); Lelong v. Succession of Lelong, 164 So.2d 671 (La. App. 3rd Cir.1964). Parol or extrinsic evidence may be admitted to aid in construing a trust instrument only if the instrument is ambiguous or uncertain, and only to explain, and not to contradict, the instrument. Lelong v. Succession of Lelong, supra.
Mr. Kneipp testified  without contradiction  that Mrs. Woods, as settlor, made the decision to not establish a mineral depletion account. Section 7.1(B)(18) of the trust instrument gives the trustee sole discretion to allocate to either income or principal. He did so in a manner to effectuate Mrs. Woods' intent to not establish a mineral depletion account. Certainly her intent should be effectuated.
The trial court did not err in failing to find a breach of duty when the trustee failed to maintain mineral depletion accounts.

RESTITUTION
If a trustee commits a breach of trust he shall be chargeable with: (1) A loss or depreciation in value of the trust estate resulting from a breach of trust; or (2) A profit made by him through breach of trust; or (3) A profit that would have accrued to the trust estate if there had been no breach of trust. La. R.S. 9:2201.
In Section VII of the instant trust instrument, the following provision pertaining to the trustee's liability is found:
20. Any individual Trustee is relieved from all liability in connection with administration of the Trust, except for liability for breach of the duty of loyalty to *187 a beneficiary or for breach of trust committed in bad faith.
The trust instrument relieves Mr. Kneipp from all liability save a breach of a duty of loyalty to a beneficiary or for a breach of trust committed in bad faith. The record is devoid of any evidence of such breaches by Mr. Kneipp. Also absent is any evidence of harm to the plaintiffs. Nor has there been any damages to the mineral properties which remain the primary assets of the trusts. Consequently, the plaintiffs have not demonstrated that restitution was appropriate.

REMOVAL OF TRUSTEE OR POSTING OF BOND
A trustee shall be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause. La. R.S. 9:1789. That statute contemplates more than a mere technical violation of the Trust Code as grounds for removal of a trustee. Fertel v. Brooks, XXXX-XXXX (La.App. 4th Cir.9/25/02), 832 So.2d 297; In re Mashburn Marital Trusts, XXXX-XXXX (La.App. 1st Cir.12/28/06), 951 So.2d 1136, writs denied, XXXX-XXXX and XXXX-XXXX (La.4/20/07), 954 So.2d 164, 167. Mere hostility or incompatibility between the trustee and a beneficiary is not sufficient grounds for removal; there must be factual allegations that the hostility interfered with or adversely affected the administration of the trust for it to be a reason for removal. Martin v. Martin, 95-0466 (La. App. 4th Cir.10/26/95), 663 So.2d 519, writ denied, 95-2806 (La.1/29/96), 666 So.2d 682. Failure to provide annual accountings, standing alone, is not sufficient grounds to remove a trustee. Albritton v. Albritton, supra.
Section VIII of the trust instrument provided that, in the event of the death or withdrawal of Mr. Kneipp as trustee, the Ouachita National Bank shall serve as the Trustee. Section XIII of the trust instrument provided that "[n]o individual Trustee shall be required to furnish bond or security."
We find that the record does not contain a showing of "sufficient cause" for Mr. Kneipp's removal as trustee. The record shows no hostility by Mr. Kneipp toward the plaintiffs. Any "incompatibility" arose on the plaintiffs' part after Mrs. Woods' death and their discovery of the contents of her last will and testament, which was apparently not as advantageous to them as they had hoped. Therefore, we find that the trial court did not err in failing to remove Mr. Kneipp as trustee or require him to post bond.

CONCLUSION
We reverse the trial court judgment insofar as it overruled the plaintiffs' objections to the accounting of the trustee and order that there be a new accounting as directed in this opinion. Additionally, the trustee is directed to furnish copies of this new accounting to all income and principal beneficiaries of the trusts. In all other respects, the trial court judgment is affirmed. Costs of this appeal are assessed one-half to the plaintiffs/appellants and one-half to the trustee.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] At the time the trust was created, Mrs. Thomas' name was Carolyn Cordell Young.
[2] Mrs. Thomas appears to be the plaintiff with the most interest in this case, yet we question her standing to contest the insurance issue, and the failure of the plaintiffs to join the other principal beneficiaries.
[3] According to this court's rudimentary accounting abilities, it appears that: (1) the income should be equally allocated to the five trusts; (2) the expenses should be equally subtracted from these trusts; and (3) the unallocated income should be allocated to the principal of the five trusts at year's end.

We are concerned that in the years income distributions were made to Mrs. Thomas and Chris, Chris' payments may have impermissibly invaded the income and principal of the other trusts. A CPA should be able to unravel this accounting conundrum and mathematically demonstrate the individual trust balances throughout the life of the trust.
Furthermore, any future disputes on the accounting of the trusts shall involve, as parties, all income and principal beneficiaries of the trusts.