JUDE G. GRAVOIS, Judge.
| ¡Appellant, Eulalie Anna Mott (“Mrs. Mott”), appeals various judgments rendered by the trial court in the Succession of Adrian Frayle Powell and Robert Glen Powell, of which Mrs. Mott was executrix. In particular, Mrs. Mott appeals judgments rendered by the trial court in the succession proceeding that: 1) ordered her to return the value of certain assets that she had transferred out of a certain trust that she administered as trustee back to the trust; 2) established the amount of attorneys’ fees chargeable to the trust that she incurred for legal matters involving the trust; and 8) set her fee as trustee of the trust. For the reasons that follow, we affirm the judgments of the trial court.

FACTS AND PROCEDURAL HISTORY

Adrian and Robert Powell (“the Pow-ells”), husband and wife for more than twenty years, entered into a revocable living trust (“the Powell Living Trust” or “the Living Trust”) on May 29, 1996 and funded it exclusively with community property assets. They both executed their last wills and testaments on that same date. Upon Mrs. Powell’s death on January 22, 1997, the assets contained in the |sLiving Trust were divided into three sub-trusts pursuant to the terms of the Living Trust. Mr. Powell’s half of the community property (approximately $925,000 in value) went into the Robert Powell Survivor Trust (referred to in the Living Trust as “Survivor’s Share One” and sometimes referred to herein as “Mr. Powell’s Trust”). The other half of the community property was divided into the Adrian Powell Family Trust (referred to in the Living Trust as “Family Trust” and “Family Share”) and the Adrian Powell Survivor Trust (referred to in the Living Trust as “Survivor’s Share Two”) (sometimes collectively referred to herein as “Mrs. Powell’s Trusts”). The Adrian Powell Family Trust initially contained $600,000 in value. The Adrian Powell Survivor Trust initially contained approximately $325,000 in value.
Mr. Powell was the surviving trustor,[1] trustee and income beneficiary of all three trusts. The trust instrument specifically provided that Mr. Powell was individually entitled to receive discretionary payments of principal from all three trusts, as more fully described below. Mrs. Mott and Diane Adrienne Vedrenne, Mrs. Powell’s daughters by a previous marriage, were the principal beneficiaries of Mrs. Powell’s Trusts. Mark and James Mowrey (“the Mowreys”) were the principal beneficiaries of Mr. Powell’s Trust.
Upon Mrs. Powell’s death, Mr. Powell, as the sole trustee of all three trusts, administered all three trusts until his death in January of 2008, whereupon he was succeeded as trustee of all three trusts by Mrs. Mott as per the trust instrument. On February 12, 2008, Mrs. Mott opened a succession proceeding on Mr. and Mrs. Powell and applied for letters testamentary, which she received on February 13, 2008. In the course of her duties as trustee of Mr. Powell’s Trust and as executor |4of Mr. Powell’s estate, disputes arose between Mrs. Mott and the Mowreys regarding actions taken by her as trustee of Mr. Powell’s Trust.
*270 On May 28, 2008, the Mowreys filed a Motion for Expedited Hearing in the succession proceeding, asserting that shortly after Mr. Powell’s death, Mrs. Mott wrongfully withdrew from Mr. Powell’s Trust a trustee fee of $125,255.15, being approximately 5% of the corpus of Mr. Powell’s Trust. The Mowreys later also objected to Mrs. Mott’s transferring shares of Johnson & Johnson stock from Mr. Powell’s Trust directly to Mrs. Powell’s Trusts, of which she was a beneficiary, in violation of the trust documents and her fiduciary duty owed to the Mowreys as trustee. Additionally, among other things, the Mowreys also objected to the nature and amount of various attorneys’ fees that Mrs. Mott charged to and paid from Mr. Powell’s Trust.
After a contradictory hearing, by judgment dated November 18, 2008, the trial court ordered Mrs. Mott to return to Mr. Powell’s Trust the sum of $276,376.23 related to the shares of Johnson & Johnson stock that Mrs. Mott had transferred from Mr. Powell’s Trust to Mrs. Powell’s Trusts while serving as successor trustee of Mr. Powell’s Trust. That judgment also determined that Mrs. Mott’s trustee fee would be set at 1% of the first million dollars, .80 percent of the second million dollars, and .65 per cent of the third million dollars, of the final and total amount of the corpus of Mr. Powell’s Trust. By judgment dated July 31, 2009, the trial court also determined that $35,621.25 in attorneys’ fees that Mrs. Mott incurred would be chargeable to Mr. Powell’s Trust. Mrs. Mott has devolutively appealed these judgments.
On appeal, in her three assignments of error, Mrs. Mott argues that: 1) Mr. Powell exceeded his authority as trustee when, while trustee of both his own trust and his wife’s trusts, he transferred principal (shares of Johnson & Johnson stock | sand other cash) from Mrs. Powell’s Trusts to his own trust; 2) the attorneys’ fees the court allowed her to charge to Mr. Powell’s Trust were inadequate and contrary to law; and 3) the trustee fee awarded to her by the trial court was also inadequate and not supported by law.
The Mowreys filed an Answer to Mrs. Mott’s appeal, alleging that the Judgment of Possession rendered in the succession proceeding on March 3, 2010 reflected that Mrs. Mott accepted a reimbursement for a tax deduction previously disallowed to her by a judgment of the trial court dated December 3, 2009 as a compromise towards final conclusion of the trust and succession proceeding without any further hearings. Because Mrs. Mott filed this appeal, thus dragging out the litigation (in their opinion), the Mowreys seek an order modifying the Judgment of Possession compelling Mrs. Mott to return the sum of $19,117.05 attributable to the tax deduction previously disallowed by the district court.

APPLICABILITY OF LAW OF THE CASE DOCTRINE

Initially, we note that the Mowreys have objected to appellate review of Mrs. Mott’s first and third assignments of error, arguing that the “law of the case” doctrine is applicable herein. Following the adverse rulings by the trial court on these issues, Mrs. Mott sought a writ of review of these issues with this court in writ number 08-C-1277 (La. 5 Cir. 2/4/09) (unpublished writ disposition). The Mowreys argue that the law of the case doctrine precludes a second review, on appeal, of the trial court’s rulings on these issues.
It is true that generally, when an appellate court considers arguments made in supervisory writ applications, the court’s disposition on the issue considered becomes the “law of the case,” foreclosing re-litigation of that issue either at the district court on remand or in the appellate court on a later appeal. However, the | ^denial of *271 a writ application creates a different situation. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. Cotton v. Gaylord Container, 96-1958, 96-2029, and 96-2049 (La.App. 1st Cir.3/27/97), 691 So.2d 760, 763, writ denied, 97-0800 (La.4/8/97), 693 So.2d 147.
This Court’s disposition of said writ number 08-C-1277 is as follows:
After review of the writ application and the attachments thereto, including the supplementing transcript, we find no error in the judgment complained of. We thus decline to exercise our supervisory jurisdiction. (Emphasis added.)
Since the reviewing panel of this Court expressly declined to exercise this Court’s supervisory jurisdiction in its review of said writ application, we shall not apply the law of the case doctrine in this instance.

ASSIGNMENT OF ERROR NO. ONE-AUTHORITY OF THE TRUSTEE

In her first assignment of error, Mrs. Mott argues that the trial court erred in finding that Mr. Powell had complete discretion to withdraw principal from Mrs. Powell’s Trusts.
Pertinently, the court in In re Succession of Wilkerson, 44,213 (La.App. 2 Cir. 4/8/09), 9 So.3d 1058, recently stated the following concerning interpretation of trust instruments and appellate review thereof:
In construing a trust, the settlor’s intention controls and is to be ascertained and given effect, unless opposed to law or public policy. Thomas v. Kneipp, 43,228 (La.App.2d Cir.05/28/08), 986 So.2d 175. Intent is an inherently factual finding. Klebanoff v. Haberle, 43,102 (La.App.2d Cir.03/19/08), 978 So.2d 598. A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Thomas, supra. The issue to be resolved is not whether the trier of fact was right or wrong, but whether its conclusion was reasonable. Wood v. Spillers, 37,087 (La.App.2d Cir.04/09/03), 843 So.2d 555. Where there are two 17permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
Furthermore, LSA-R.S. 9:2061 provides as follows concerning the duties and powers of the trustee: “The nature and extent of the duties and powers of a trustee are determined from the provisions of the trust instrument, except as otherwise expressly provided in this Code, and, in the absence of any provisions of the trust instrument, by the provisions of this Part and by law.”
In its judgment of November 18, 2008, the trial court held:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Eula-lie Anna Mott shall immediately return to the benefit of the Robert Powell Survivor’s Trust, the sum of $267,376.23 related to the Johnson & Johnson stock, providing the Mowreys with evidence confirming the transfer causing the return of these sums.
In ordering Mrs. Mott to return the principal she transferred from Mr. Powell’s Trust to Mrs. Powell’s Trusts, the trial court implicitly found that Mr. Powell’s transfers of principal to his trust from Mrs. Powell’s Trusts during the years of his administration as trustee of Mrs. Powell’s Trusts were permissible under the trust instrument creating Mrs. Powell’s Trusts. On appeal, Mrs. Mott objects to *272 this ruling, arguing that the language of the trust instrument gave Mr. Powell discretion to withdraw principal from Mrs. Powell’s Survivor Trust only for needs associated with his “health, maintenance, support and education.” She argues that the trial court’s interpretation of this language renders meaningless the fact that each of Mrs. Powell’s trusts employed a different discretionary standard to describe when Mr. Powell (the surviving trustee) could invade the principal of Mrs. Powell’s Trusts.
The substance of this issue involves an interpretation of the trust instrument (the Powell Living Trust) signed by Mr. and Mrs. Powell, as trustors, trustees and beneficiaries. The trust instrument language at issue is as follows:
Robert Powell Survivor Trust (Article 8, Section 2):
b. Discretionary Payment of Principal
At any time or times during the trust term our Trustee shall pay to or apply for the benefit of the surviving Trustor so much of the principal of the Survivor’s Share One as our Trustee deems proper for the surviving Trustor’s comfort, welfare and happiness. In exercising discretion our trustee shall give the consideration that our Trustee deems proper to all other income and resources then readily available to the surviving Trustor for use for these purposes and that are then known to our Trustee.
Adrian Powell Survivor Trust (Article 8, Section 3):
c. Discretionary Payment of Principal At any time or times during the trust term our Trustee shall pay to or apply for the benefit of the surviving Trustor so much of the principal of the Survivor’s Share Two as our Trustee deems proper for the surviving Trustor’s health, maintenance, support and education. In exercising discretion, our Trustee shall give the consideration that our Trustee deems proper to all other income and resources then readily available to the surviving Trustor for use for these purposes and that are then known to our Trustee.[2]
d.Limitation on Discretionary Payment of Principal by Trustee
Notwithstanding the provisions of the preceding subsection, we recommend but it is not mandatory that our Trustee shall first exhaust the principal from Survivor’s Share One before making discretionary payment of principal from Survivor’s Share Two.
Adrian Powell Family Trust (Article 9, Section 1):
b. Discretionary Payment of Principal At any time or times during the trust term our Trustee shall pay to or apply for the benefit of the surviving Trustor so much of the principal of the Family Trust as our Trustee in its discretion deems proper for the surviving Trustor’s health, maintenance, support and education.
c. Guidelines for Trustees Discretion No amount paid or applied need thereafter be repaid to our Trustee or restored to our trust. In exercising discretion, our trustee shall give the consideration that our Trustee deems proper to all other income and resources that are known to our *273 | ¡/Trustee and that are readily available to the surviving Trustor for use for these purposes. Our Trustor shall accumulate and add to principal any net income not distributed,
d. Limitation on Discretionary Payment of Principal by Trustee
We recommend, but it is not mandatory, that our Trustee shall first exhaust the principal from the Survivor’s Trust before making discretionary payments of principal to the surviving Trustor from the Family Trust.
(Emphasis added.)
The trust instrument further expressly provides that if any question arose concerning the powers of the trustees, Mr. and Mrs. Powell had the “power to do all acts that might legally be done by an individual in absolute ownership.”
During his tenure as trustee, Mr. Powell made the following transfers of cash and stock from Mrs. Powell’s Survivor Trust to his own trust: $21,117 on December 24, 1997; $11,794 on April 13, 1999; 1,100 shares of Johnson & Johnson stock on January 15, 2004; 1,886 shares of Johnson & Johnson stock on July 28, 2004; and 295 shares of Johnson & Johnson stock on April 5, 2005. Mr. Powell also made the following transfers of cash from Mrs. Powell’s Family Trust to his own trust: $18,624 on December 28, 1997; and $74,731 on August 22, 2007.[3]
Mrs. Mott contends that Mr. Powell’s various “principal” transfers of the Johnson & Johnson stock and other cash transfers from Mrs. Powell’s Trusts to Mr. Powell’s Trust were in violation of above-quoted trust language, and therefore her transfer in 2008 of the value of such transfers from Mr. Powell’s Trust to Mrs. Powell’s Trusts was to return the principal to Mrs. Powell’s Trusts, i.e., to “correct” Mr. Powell’s unauthorized transfers of principal from Mrs. Powell’s | inTrusts to his own trust. Mrs. Mott based the fact and the amount of the transfer on her interpretation of the trust instrument and an accounting report generated by the LaPorte Sehrt accounting firm, which proceeded on the assumption that Mr. Powell’s principal transfers were unauthorized.
At the hearing on this issue on November 12, 2008, counsel for the Mowreys presented the testimony of attorney Max Nathan, who qualified as an expert in the Louisiana law of trust and estate planning. Mr. Nathan stated that he performs much legal work for trust departments of various banks in the New Orleans area, but was not general counsel for any particular bank. He testified that in preparation for his testimony, he reviewed the trust instrument in question (the Powell Living Trust), an inventory prepared by Mr. Powell at Mrs. Powell’s death, Mr. and Mrs. Powell’s probated wills, the descriptive lists, the attorneys’ bills from two law firms submitted by Mrs. Mott, the docket sheets, the proposed estate tax return for Mr. Powell, and the estate tax return filed for Mrs. Powell’s estate in 1997.
Mr. Nathan testified that in his experience, he had seen and used similar lan *274 guage in his practice of setting up trusts. He opined that based on his experience, the particular language used in Mrs. Powell’s Trusts was meant to give Mr. Powell complete access to the principal of Mrs. Powell’s Trusts and that by using such language, Mr. Powell was not accountable to anyone else if and whether he invaded the principal of Mrs. Powell’s Trusts. Mr. Nathan testified that the trust language “as our Trustee deems proper” gave Mr. Powell “absolute discretion” to invade the principal of Mrs. Powell’s Trusts. Mr. Nathan also testified that the language “for the surviving Trustor’s health, maintenance, support, and education,” was meant to be broad and expansive, allowing Mr. Powell “unfettered” access to the principal in Mrs. Powell’s Trusts, just as that | nsame language would have allowed Mrs. Powell the same unfettered access to the principal in Mr. Powell’s Trust had she been the surviving trustor/trustee/benefi-ciary instead of Mr. Powell. Mr. Nathan, however, could not explain why Mr. Powell’s Trust employed different language from Mrs. Powell’s Trusts, although, in his opinion, he didn’t see much difference between the terms (“comfort, welfare and happiness” v. “health, maintenance, support and education”).
Both parties cite the case of Norton Family Trust First Nat. Bank of Commerce v. Schmitt, 94-1035 (La.App. 5 Cir. 4/25/95), 655 So.2d 398. Therein, the surviving settlor and co-trustee sought to invade the trust’s principal in order to pay her medical bills (for inoperable lung cancer) but was refused by the co-trustee, her husband’s son from his first marriage (and a principal beneficiary of the trust). She filed suit, which ultimately concluded after her death. The trial court ruled in her favor, finding that the trust instrument allowed her to invade the principal for the purpose stated. In affirming the trial court, this Court considered the context in which the trust was made:
First, the Settlors of the trust were husband and wife for twenty years, who took a large portion of their liquid assets, which were community property, and placed them in the trust that they thereby created. They named themselves as Trustees and income beneficiaries. Under the provisions of the trust, they gave themselves, as Trustees, the discretion to distribute income and, under certain circumstances, principal. They gave themselves all powers conferred by existing law and any powers expanded by future changes in the law. It was expressly provided that if any question arose concerning the powers of the Trustees, the trust instrument was to be “liberally construed as granting such power.”
Upon review, it is clear, as stated in the original petition filed by Eileen Jackson Norton, and not contradicted, that the settlors intended that these funds, income and principal, would be available to them during their lifetime to care for their needs regarding “health, education, maintenance or support.” They placed their liquid assets in trust, to avoid probate, and granted themselves the broadest powers to distribute the funds in their discretion. (Emphasis added.)
112This Court further found that the trust instrument did not require Mrs. Norton to first deplete her own assets before invading the principal of the trust established for her benefit. The trust instrument before this court contains similar and explicit language to that effect, as noted above.
While the trust language at issue in Norton is not identical to the trust language at issue here, there are similarities between Norton and the instant case in that the Powells also used trust language, *275 as noted above, that showed their intent to grant themselves, as trustees, the broadest powers to distribute funds in their discretion, according to Mr. Nathan.
Other aspects of the Norton case, upon which Mrs. Mott relies, are less instructive for the case before this court. In the Norton case, it was clear that Mrs. Norton desired to invade the trust’s principal in order to pay outstanding medical bills, which clearly fell into the trust’s language regarding “health, education, maintenance or support.” In this case, however, the records show that Mr. Powell did not spend the principal that he withdrew from Mrs. Powell’s Trusts, but retained it in his own, where it stayed until his death. Accordingly, Mrs. Mott argues, Mr. Powell clearly abused his discretion in invading the principal of Mrs. Powell’s Trusts because he clearly had no needs relative to his “health, maintenance, support and education.”
This argument, however, ignores the “unfettered” discretion that the trustors granted to themselves, as noted above. Further, the trial court implicitly found, based upon the expert testimony of Mr. Nathan, that the terms “health, maintenance, support and education” were meant to be very broad and expansive. The records show that Mr. Powell transferred the stock from Mrs. Powell’s Trusts to his own trust in various transactions in 2004 and 2005. The fact that the principal, once transferred, remained untouched in his trust is not indicative that |1sMr. Powell abused his broad discretion as trustee. There is simply no evidence in this record to show what led Mr. Powell, at those times, to make those transfers, and therefore there is no evidence that he abused his discretion. Mr. Nathan testified that he was not aware of any use of funds that could not be considered as being used for Mr. Powell’s “maintenance or support,” but, above all, it was in Mr. Powell’s sole discretion as to whether he needed funds for his maintenance and support. If discretion is conferred upon a trustee with respect to the exercise of a power, its exercise shall not be subject to control by the court, except to prevent an abuse of discretion by a trustee. LSA-R.S. 9:2115.
The trial court clearly found that Mrs. Mott as trustee had abused her discretion when making the transfer from Mr. Powell’s Trust to Mrs. Powell’s Trusts. As a successor trustee, because she was not a surviving trustor and trustee, her rights and powers were different than those enjoyed under the trust instrument by Mr. Powell, both a surviving trustor and trustee.
The trial court, while it did not give reasons for its ruling, clearly credited the testimony of Mr. Nathan regarding the meaning of the trust language. Given no evidence to the contrary, we find no manifest error or abuse of discretion in the trial court’s ruling. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. TWO-ATTORNEYS’ FEES

Mrs. Mott next argues that the trial court erred in capping the attorneys’ fees she incurred chargeable to Mr. Powell’s Trust at $85,621.25. She argues that there is no legal basis to cap the award. In brief, she asserts that she has already incurred legal fees in excess of $150,000.00, not including the additional fees for this appeal, for which she also seeks reimbursement. In brief, she describes all the legal work performed to administer the trusts and Mr. Powell’s succession, a great 114deal of which she argues was necessitated by the Mowreys’ demands to remove her as trustee, executrix, and for premature disbursements of trust principal.
Mrs. Mott argues in brief that the Living Trust gives the trustee authority to *276 employ agents, including attorneys, to assist with the administration of the trust. It further gives the trustee authority to “prosecute or defend actions, suits, claims, or proceedings for the protection or benefit of the trust and our Trustee in the performance of our Trustee’s duties.” She further argues that Louisiana law bolsters this language and provides that a trustee may incur necessary expenses and is entitled to indemnity from the trust estate for those expenses. La. R.S. §§ 9:2117 and 2191.
Mrs. Mott agrees that the fees she requests are “substantial,” but that this succession has been made lengthy and contentious by the Mowreys instituting numerous court proceedings challenging her various actions as trustee and executrix, including but not limited to an action to remove her as trustee, an action to compel an accounting, and an action to compel the return of the amount associated with the Johnson & Johnson stock.
At the hearing, the Mowreys asked the trial court to limit the attorneys’ fees for which they were responsible to $15,000, citing the testimony of Mr. Nathan, who described what his law firm might charge for a succession the size of Mr. Powell’s.[4] They argued that the amount of hours billed was excessive, and that much of the legal work was incurred as a result of Mrs. Mott’s “self-dealing.” After a full eviden-tiary hearing and a review of all submitted bills, the trial court assessed the attorneys’ fees chargeable to Mr. Powell’s Trust at $85,621.25.
11sThis court notes that the Mowreys were successful in their demands that Mrs. Mott return the trustee fee and the value of the stock to Mr. Powell’s Trust, though they were unsuccessful in removing Mrs. Mott as trustee. Likewise, as set forth below, Mrs. Mott is unsuccessful here in arguing that she is entitled to a trustee fee greater than that awarded by the trial court. In awarding significantly lower attorneys’ fees than those requested by Mrs. Mott, the trial court clearly felt that the attorneys’ fees claimed by Mrs. Mott for litigating these issues were not contemplated or authorized by the trust instrument language upon which Mrs. Mott relies.
All things considered, we find no error in the trial court’s ruling setting forth the amount of Mrs. Mott’s attorneys’ fees chargeable to Mr. Powell’s Trust. The record shows that the lengthy and contentious nature of this proceeding was due in large part to the above-described actions by Mrs. Mott, as trustee and executrix, that were successfully challenged by the Mowreys because these actions either violated her fiduciary duty to them as beneficiaries or were not authorized by the trust instrument. Therefore, we find no error in the trial court’s conclusion on the amount of attorneys’ fees incurred by Mrs. Mott that are chargeable to Mr. Powell’s Trust.
ASSIGNMENT OF ERROR NO. THREE — TRUSTEE’S FEE
Mrs. Mott also argues that the trial court erred in establishing her trustee fee based on a percentage of the trust corpus following a sliding scale used by local banks’ trust departments, instead of allowing her a flat fee of 2.5% of the trust corpus. She argues that the trust instrument did not tie the trustee fee to a corporate fiduciary’s published fee schedule. She argues that the court should base | ujher fee on what the law has determined *277 is reasonable for executors in succession proceedings, which is 2.5% of the corpus.[5]
The trial court’s judgment on this issue ordered that Mrs. Mott’s trustee fee would be based on the final and total amount of the corpus of Mr. Powell’s Trust and would be set at 1% of the first million dollars, .80 percent of the second million dollars, and .65 per cent of the third million dollars. According to the record, using this scale, Mrs. Mott’s trustee fee came out to $22,491.00.
Mr. Powell’s Trust expressly provides that any trustee fee should equal “compensation customarily charge[d] for similar services in the same geographic area for the same time period.” Submitted as evidence by the Mowreys at the evidentiary hearing was a survey of the fees charged by several local financial institutions that the Mowreys could identify that have trust departments that provide “similar services” to the trustee services provided by Mrs. Mott. All local financial institutions surveyed used a sliding scale for their fees; that is, a certain percentage is charged for the first million dollars of corpus value, another percentage is charged for the second million dollars, and so on. As illustrated through the exhibits in the record, the average amounts charged were as follows: on the first million, 1.018%; on the second million, .806%; on the third million, .65%. Expert witness Mr. Nathan testified that these figures were consistent with his professional experience representing trusts and institutions that handle trusts. Mrs. Mott, on the other hand, submitted no contradictory evidence.
While the trust’s language on this issue specifically references “corporate fiduciaries,” it does relate the trustee’s fee to those charged for “similar services” in the geographical area. Given that many banks in the geographical area have trust departments that perform “similar services,” it was reasonable for the trial Incourt to look to those rates in determining the appropriate amount of Mrs. Mott’s fee as trustee of Mr. Powell’s Trust, as they are easily ascertainable. Moreover, we find nothing in the trust instrument itself that argues against making such an application. Accordingly, we find no manifest error or abuse of discretion in the trial court’s ruling setting the trustee fee based upon the average of the local banks’ fee schedule as introduced at the evidentiary hearing. This assignment of error is without merit.

ANSWER TO THE APPEAL

The Mowreys filed an Answer to this appeal. They argue that the district court’s judgment of March 3, 2010 recognizing Mr. Powell’s Trust’s entitlement to $247,364.12 reflected a concession made by the Mowreys by way of compromise toward entry of a Judgment of Possession and final conclusion of this succession proceeding. Specifically, they note that the trial court expressly ruled on December 3, 2009 that Mrs. Mott “is not entitled to reimbursement for a tax deduction attributed to the Mowreys and the Robert Powell Survivor’s Trust.” They contend that the “tax deduction” at issue was an amount equal to $19,117.05, and now request this Court to amend the Judgment of Possession to additionally order return of this sum to them.
Other than the Mowreys’ representations regarding the alleged amount of the tax deduction and alleged compromise between the parties, this Court cannot determine on the record before it the amount of said tax deduction (the judgment is silent regarding the amount) or that the Judg *278 ment of Possession reflects a compromise between the parties. We have no basis upon which to disturb the trial court’s rulings contained in the Judgment of Possession in this regard, rendered on 11sMarch 8, 2010, and accordingly, it is affirmed. The relief requested by the Mowreys in their Answer to this appeal is therefore denied.

CONCLUSION

For the reasons assigned above, we affirm the judgments appealed by Mrs. Mott. We further affirm the Judgment of Possession rendered on March 3, 2010 and deny the relief requested by the Mowreys in their Answer to this appeal.

AFFIRMED

. The trust instrument refers to the Powells as “Trustors.” It appears that the Powells intended this term to be synonymous with "set-tlor” as defined in LSA-R.S. 9:1761.

. This language conforms with LSA-R.S. 9:2068, which states that the trust instrument may direct or permit a trustee to pay principal to an income beneficiary for support, maintenance, education, or medical expenses, or, pursuant to an objective standard, for any other purpose.

. It appears that the trial court attributed some of the cash transfers from Mrs. Powell's Trusts to Mr. Powell’s Trust as a result of his being the income beneficiary of Mrs. Powell’s Trusts, which income Mr. Powell was entitled to collect on a yearly basis. The documents in the record show that Mr. Powell received the income from Mrs. Powell’s Trusts less often than scheduled by the trust instrument. In 2008 when Mrs. Mott "returned” the stock to Mrs. Powell's Trusts from Mr. Powell’s Trust, she also transferred to Mr. Powell’s Trust from Mrs. Powell's Trusts $57,077.31 in undistributed income to which he was entitled but had not taken prior to his death.

. Mr. Nathan described Mr. Powell’s succession as relatively small, with only four assets. He also made specific comments on particular items in the attorneys’ fees, describing certain charges and the hours billed to certain items as clearly excessive.

. The record reflects that Mrs. Mott has waived any fee she would otherwise be end-tled to as the executrix of the Powells' succession proceeding.